PATRICK F. COOTEY and YVONNE M. COOTEY, Plaintiffs-Appellants, *v.* SUN INVESTMENT, INC., and COUNTY OF HAWAII, Defendants-Appellees, and COUNTY OF HAWAII, a municipal corporation, Third-Party Plaintiff-Appellee, *v.* JHK TANAKA, INC., Third-Party Defendant-Appellee

NO. 9168

(CIVIL NO. 6320)

NOVEMBER 5, 1984

BURNS, C.J., HEEN AND TANAKA, JJ.

## OPINION OF THE COURT BY HEEN, J.

In this negligence action for damages caused by the flooding of plaintiffs Patrick F. and Yvonne M. Cootey's (Cooteys) home, Cooteys appeal the action of the trial court denying their motion for directed verdict and granting those of defendants Sun Investment, Inc. (Sun), County of Hawaii (County), and JHK Tanaka, Inc. (Tanaka).[1]

The general question is whether the court erred in granting Defendants' motions and denying Cooteys'.[2] The specific question is whether, considering the evidence and the reasonable inferences therefrom in the light most favorable to Cooteys, it can be said that the jury could reasonably have found Defendants, individually or collectively, liable for Cooteys' damages. We answer yes to both questions and reverse.

### FACTS

In 1972 Cooteys built a home on their houselot in the Kamuela Lakeland subdivision (Lakeland) on the island of Hawaii. In a letter dated September 27, 1973 (approval letter), County gave tentative approval to Sun to subdivide its 34.284 acre property, also in Kamuela. The approval letter set forth the conditions required for final subdivision approval, such as the construction of drainage facilities, and stated, *inter alia,* as follows:

2. Subdivider to make following revisions and/or additions to map:
   a. Easements.
   b. Existing drainage or natural flow of stream.
   c. Road "B" and Lots 1 through 13 may be affected by the realignment of the Hawaii Belt Road. Copy of comments from the Highways Division is enclosed for revisions to plat maps.
3. Subdivider to submit following items:

\* \* \*

---

[1] Where appropriate hereafter Sun, County and Tanaka will be referred to collectively as Defendants. Also, where appropriate, Sun and Tanaka will be referred to as Developers.

[2] Although Cooteys raise the issue of the denial of their motion, the thrust of their argument is directed at the granting of Defendants' motions. Our review of the evidence indicates Cooteys' motion was properly denied.

c. Drainage calculations and plans for approval by the Department of Public Works and the State Highways Division.

Sun's property is separated from Lakeland by a large pasture (pasture) approximately 320 feet wide. Sun's subdivision was called Puukapu Acres, Unit I (Puukapu Acres), and consisted of 27 houselots averaging 1.1803 acres per lot.

Tanaka is an engineering corporation that represented Sun in obtaining subdivision approval, prepared the construction plans for the subdivision, designed the drainage system, and had general supervision of the construction work. County's final approval of the subdivision based upon Tanaka's detailed plans was given on October 2, 1974.

The topography of the area is such that the elevation of Puukapu Acres is higher than Lakeland and Cooteys' property. Prior to Puukapu Acres' development, surface water that collected thereon and on some of the surrounding area flowed through a natural watercourse within Puukapu Acres and onto the adjoining pasture. From the pasture it flowed onto Lakeland. Tanaka's plans called for a 50-foot-wide roadway to cut across the watercourse. In order to allow the water to continue to flow as it had done, the plans also called for installation of a 15-inch drainpipe to be installed under the road at its intersection with the watercourse. The pipe would carry the surface water, still within the watercourse, from the side of the road away from Lakeland to the nearer side and return it to the same watercourse. The water would continue in the watercourse from the pipe's outlet to the boundary of the subdivision, a distance of approximately 420 feet, and flow onto the pasture. Installation of the subdivision improvements by a contractor engaged by Sun was completed in 1976.

Between December 1978 and March 1980, a part of Cooteys' home was flooded during heavy rains on at least five occasions,[3] because the runoff rain water that had flowed through the drainpipe and the watercourse onto the pasture finally accumulated on Cooteys' property.

On May 5, 1980, Cooteys filed this action for damages against Sun and County. Tanaka was added as a defendant[4] in an amended com-

---

[3]Two floodings occurred in December 1978, one each in February and November of 1979, and one in March 1980.

[4]Although Tanaka was added as a defendant in the amended complaint, the caption thereto and all subsequent pleadings continue to indicate Tanaka to be a third-party defendant.

plaint filed on September 8, 1980. The amended complaint alleged that (1) Defendants had failed to design, construct and maintain Puukapu Acres' drainage system in compliance with those laws, rules, regulations and directives relating to the subdivision of lands in Hawaii County; (2) County had failed to properly maintain the drainage system after its completion and dedication; and (3) Developers, through their design and installation of the subdivision improvements, had interfered with the natural flow of surface water over Puukapu Acres in a manner unreasonable under the circumstances. The complaint sought damages for injury to Cooteys' home and personal property and for mental distress. Defendants answered the amended complaint and filed cross-claims against each other.

Jury trial commenced on October 25, 1982, and upon completion of all the evidence all parties moved for directed verdict under Rule 50(a), Hawaii Rules of Civil Procedure (1980). The court granted Defendants' motions and denied Cooteys' motion. Judgment was entered on December 7, 1982, and Cooteys filed their notice of appeal on December 16, 1982.[5]

## STANDARD OF REVIEW

Generally, "on motions for a directed verdict, the evidence and the inferences which may be fairly drawn from the evidence must be considered in the light most favorable to the party against whom the motion is directed and if the evidence and the inferences viewed in that manner are of such character that reasonable persons in the exercise of fair and impartial judgment may reach different conclusions upon the crucial issue, then the motion should be denied and the issue should be submitted to the jury." *Young v. Price,* 47 Haw. 309, 313, 388 P.2d 203, 206 (1963), *reh'g,* 48 Haw. 22, 395 P.2d 365

---

[5]Defendants contend that the order granting their motions for directed verdict and the judgment that ensued do not dispose of the cross-claims among the defendants. Consequently, there is no appellate jurisdiction. We disagree.

The order granting Defendants' motions for directed verdict states, "there being no just reason for delay, judgment is hereby entered in favor of [Defendants]." That language satisfied the requirement of Rule 54(b), Hawaii Rules of Civil Procedure (1981), relating to a final judgment made on less than all the claims in a multiple party-multiple claim case. We have jurisdiction.

(1964); *Collins v. Greenstein*, 61 Haw. 26, 595 P.2d 275 (1979); *McKenna v. Volkswagenwerk*, 57 Haw. 460, 558 P.2d 1018 (1977); *Switzer v. Drezen*, 2 Haw. App. 96, 626 P.2d 202 (1981); *Taira v. Oahu Sugar Company, Limited*, 1 Haw. App. 208, 616 P.2d 1026 (1980). Stating it another way, the granting of a directed verdict to the defendant is proper only when after "giving to the plaintiff's evidence all the value to which it is legally entitled, and indulging every legitimate inference which may be drawn from the evidence in plaintiff's favor, it can be said that there is no evidence to support a jury verdict in his favor." *Stewart v. Budget Rent-A-Car Corp.*, 52 Haw. 71, 77, 470 P.2d 240, 244 (1970); *Lang v. Beech Aircraft Corp.*, 4 Haw. App. 237, 663 P.2d 640 (1983); *Cafarella v. Char*, 1 Haw. App. 142, 615 P.2d 763 (1980).

*Lussier v. Mau-Van Development Inc. I*, 4 Haw. App. 359, 372, 667 P.2d 804, 814-15 (1983).

As in all negligence cases, the fundamental questions are whether Defendants, individually or collectively, negligently breached a duty owed to Cooteys and whether such breach was the proximate cause of Cooteys' damages.

Before discussing the sufficiency of the evidence under the above precepts, we must discuss, first, whether Defendants, individually or collectively, owed a legal duty to Cooteys and, second, the concept of legal causation.

## DUTY

Cooteys propound the following arguments to support their theory that each defendant owed them a duty to prevent the flooding of their property: (1) Defendants had a duty to develop Puukapu Acres in compliance with the laws and regulations relating to subdivisions.[6] County

---

[6]Hawaii Revised Statutes (HRS) § 62-34(7) (1976) authorizes the various counties to regulate subdivisions. The statute reads as follows:

General powers. The board of supervisors of each county shall have general supervision and control of all the public affairs of the county and the supervision of all subordinate officers, and, without prejudice to the generality of the foregoing powers, shall, except as otherwise provided, have the following specific powers:

\*   \*   \*

(7) Subdivisions. To regulate and require the construction of roads and the

had required as a precondition to subdivision approval that Tanaka submit a drainage map or calculations relating to the proposed drainage facilities. Neither the map nor calculations were submitted and the subdivision approval was in violation of County's Subdivision Code.[7] Defendants therefore violated a statutory duty owed to Cooteys. (2) After construction of the drainage facilities, County was responsible for their maintenance under Hawaii Revised Statutes (HRS) § 265-6.[8] After receiving notice of damage from the first flood, County had a duty to correct the drainage situation and avoid further flooding. (3) County owed Cooteys a duty under common law by reason of its "special relationship" with Developers to prevent them from creating an unreasonable risk of foreseeable harm to Cooteys. (4) Developers had a common law duty to avoid developing Puukapu Acres in such a manner as to create an unreasonable risk of foreseeable harm to Cooteys' property.

We hold that none of the Defendants owed Cooteys a statutory duty in these circumstances, but that all Defendants, individually and collectively, owed them a common law duty. The issues raised by Cooteys' arguments are discussed seriatim.

---

laying of water and sewer mains in subdivisions of land before the lots in the subdivisions are offered for sale or sold and to prescribe the conditions under which the mains shall be laid; provided, that no requirement for the laying of water and sewer mains shall be made to apply in any area in which no county water or sewer systems exist[.]

[7]At the time of subdivision approval, Hawaii County Ordinance No. 62 governed subdivision development. Ordinance No. 62 became chapter 9 of the Hawaii County Code, effective December 31, 1974.

[8]At that time, HRS § 265-6 read as follows:

Counties to maintain privately constructed improvements, when. Whenever any improvements have been constructed and completed by private parties in full compliance with all applicable statutes, ordinances of any county, and rules and regulations, having the force of law, of the board of water supply or other similar body of the county, relating to the subdivision of lands, the council or other governing body of the county shall, notwithstanding any other provisions of law to the contrary, accept, maintain, and repair (and operate as the case may be) the improvements.

The term "governing body" as used in this section shall be construed to include, without prejudice to the generality of the meaning of the term, any board, department, or other body, created by statute or by ordinance, within the county having custody, control, or management of any public facility, public utility, or public function.

The statute was repealed by Act 4, § 1, 1981 Haw. Sess. Laws.

1.

## STATUTORY DUTY UNDER SUBDIVISION LAWS

We do not find it necessary to discuss Defendants' duty to Cooteys under the laws relating to subdivision development for the reason that the evidence fails to support Cooteys' argument.

Cooteys failed to prove that submittal of either a drainage map or drainage calculations was in fact a prerequisite to subdivision approval either by law or regulation. The unrebutted testimony was that the items were requested for informational purposes and not as a condition of approval. Additionally, the evidence indicates that a drainage map was submitted as part of the subdivision construction plan, and that all requirements had been met before the subdivision was approved.

Cooteys also argue that Tanaka, individually, violated a standard of care applicable to professional engineers in that it failed to prepare and submit a drainage map or calculations required by the County. For the above reasons, the argument is without merit.

2.

## COUNTY'S DUTY TO MAINTAIN DRAINAGE FACILITIES

The general rule is that municipalities are not responsible for maintenance of improvements in private subdivisions until the municipality has accepted or exercised some manner of legal control over them. *See Carter v. Hawaii County,* 47 Haw. 68, 384 P.2d 308 (1963); McQuillin, *Mun. Corp.* § 33.43 (3rd ed. 1983); *Thompson v. Town of Portland,* 159 Conn. 107, 266 A.2d 893 (1970); *La Salle National Bank v. Chicago,* 19 Ill. App. 3d 883, 312 N.E.2d 322 (1974). Acceptance is necessary, even in the case of statutory dedication. McQuillin, *supra,* § 33.44.

Here, the evidence shows that Developers were informed that dedication of the improvements could not be accepted because they had failed to remove some trees growing within the road right-of-way. Thereafter, up to the time of trial, Developers made no further attempt to dedicate. The duty Cooteys argue for did not exist.

3.

## COUNTY'S DUTY UNDER
## "SPECIAL RELATIONSHIP" WITH DEVELOPERS

Cooteys argue that County also had a duty to them under common law principles because County had a "special relationship" with Developers which required it to prevent them from developing Puukapu Acres in such a manner as to cause damage to Cooteys' property. Cooteys argue that, having imposed requirements on Developers to provide drainage facilities in Puukapu Acres, County was required to ensure that the subdivision and its facilities did not create an unreasonable risk of foreseeable harm to Cooteys. We agree.

In *Seibel v. City and County of Honolulu,* 61 Haw. 253, 257-58, 602 P.2d 532, 536 (1977), the general rule in this area of torts is stated as follows:

> Generally, a defendant is not responsible for (that is, he has no duty to control) the behavior of a third person unless there is a "special relationship" between the defendant and either the third person who may threaten harm or the party who is the victim of the harm. This rule is set forth in the Restatement (Second) of Torts § 315 (1965):
>
>> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection.

In the field of municipal tort law, the "special relationship" principle is a judicially created exception to the doctrine that a municipal corporation is not liable for injuries suffered by a member of the general public occasioned by the negligence of the municipality's employees in the performance of a statutory duty. The other exception arises where the claimant can show that the clear intent of the statute is to benefit a particular class of individuals of which he is a member. Comment, *Municipal Tort Liability For Erroneous Issuance of Building Permits: A National Survey,* 58 Wash. L. Rev. 537, 549 (July 1983).

*Seibel, supra,* did not involve a statutory duty. There, plaintiffs were attempting to establish a special relationship between the city and their decedent's assailant on the basis of the prosecutor's knowledge of the assailant's history of sex offenses, and on a circuit court order condition-

ally releasing him from custody after his acquittal of those charges by reason of impairment of mental capacity. The court found no special relationship and did not discuss that principle from the standpoint of a statutory duty.

Most courts have been reluctant to impose liability on a municipality for negligent performance of a statutory duty under the "special relationship" doctrine absent a showing of some undertaking of a government employee or extraordinary circumstances. Comment, *supra*, at 551.[9]

The minority position, however, is to define the scope of governmental duty in terms of foreseeability and impose liability based thereon. "If it is foreseeable that a government employee's negligent performance of a statutory duty might result in harm to someone, then the municipality will be held liable." *Id.* at 553.

There are cogent arguments against the minority position. One of these is that the principle expands the liability of municipalities beyond that of private individuals who may be charged with breach of a statutory duty. It is also said that the minority position assumes that the municipality's enforcement of its ordinances is a service benefitting a particular party rather than the general public. *Id.* at 555.

However, since *Kamau and Cushnie v. Hawaii County*, 41 Haw. 527 (1957), a line of Hawaii cases has established that:

"The basic . . . [principle] of governmental tort liability in Hawaii [now] is that the State and its political subdivisions shall be held accountable for the torts of governmental employees '. . . in the same manner and to the same extent as a private individual under like circumstances . . .' HRS § 662-2." *Salavea v. City and County*, 55 Haw. 216, 220, 517 P.2d 51, 54 (1973) [footnote omitted].

\*     \*     \*

---

[9]Such extraordinary circumstances have been found where an inherently dangerous or imminently hazardous condition is present; where the danger is open and obvious requiring immediate government action; and if the claimant relied on the municipality's representations and conduct. In such instances, a greater responsibility is placed on the government either to protect the individual or to act properly. Comment, *Municipal Liability For Erroneous Issuance of Building Permits*, 58 Wash. L. Rev. 537, 551 n. 74 (July 1983).

Fundamental in any determination of liability for negligence is "the existence of a duty owed by the . . . [putative tortfeasor] to the . . . [injured person]." *Namauu v. City and County,* 62 Haw. 358, 361, 614 P.2d 943, 945 (1980). However, "it should be recognized that 'duty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." W. Prosser, *Handbook of the Law of Torts* § 53 at 325-26 (4th ed. 1971). *First Insurance Co. of Hawaii v. International Harvester Co.,* 66 Haw. 185, 189, 659 P.2d 64, 67 (1983).

Duty is a question of law and policy. In this case we must, as did the supreme court in *First Insurance,* weigh the considerations supporting recovery by an injured property owner against those favoring a limitation of a municipality's liability in these circumstances.

Public policy in Hawaii is to have the municipalities control private subdivision development for the benefit of the public at large, *Whitlow v. Jennings,* 40 Haw. 523 (1954), and generally no liability is imposed upon a municipality by virtue of its negligent enforcement of subdivision laws, ordinances and regulations. 4 A. Rathkopf, *The Law of Zoning and Planning,* ch. 71, § 2 (4th ed. 1984). However, it is also clear public policy in Hawaii to hold municipalities liable for the torts of their employees. *First Insurance, supra.*

A private subdivision may not be developed or sold in this jurisdiction without the installation of required improvements—roads, water, sewers, utilities and drainage—and the municipality's approval thereof. The nature of those improvements, particularly storm drain facilities, must necessarily vary in order to meet the exigencies of an individual subdivision's location, topography, and rainfall, as well as existing drainage facilities. The municipality's requirements must be flexible and applied on a case by case basis. Nonetheless, in any particular case, they must not be such as to create an unreasonable risk of foreseeable harm. It does not necessarily follow from the general rule against liability for negligent performance of a statutory duty that, where a municipality has approved a subdivision whose proposed drainage facilities would create an unreasonable risk of foreseeable harm to an adjoining landowner, it may escape imposition of liability. The broad application of such a rule would allow the municipality to control the actions of the subdivider yet escape the consequences of having thereby created an unreasonable risk of foreseeable injury to a neighboring landowner. That result would

clearly be in contravention of this jurisdiction's policy regarding municipal tort liability.

Therefore, we hold that in controlling the actions of a subdivider of land, a municipality has a duty not to require or approve installation of drainage facilities which create an unreasonable risk of foreseeable harm to a neighboring landowner, and where a breach of that duty is established, a municipality may be held liable for consequential damages.

4.

## DEVELOPERS' DUTY TO AVOID UNREASONABLE RISK OF FORESEEABLE HARM

In this jurisdiction, "each possessor of land may interfere with the natural flow of surface water for the development of his land so long as such interference is not unreasonable under the circumstances of the particular case." *Rodrigues v. State,* 52 Haw. 156, 164-65, 472 P.2d 509, 516 (1970). The scope of liability was stated in *Rodrigues* as follows: "[A] further limitation on the right of recovery, as in all negligence cases, is that the defendant's obligation to refrain from particular conduct is owed only to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous." *Id.* at 174, 472 P.2d at 521.

Under *Rodrigues,* Developers owed a duty to avoid developing Puukapu Acres in such a manner as to create an unreasonable risk of foreseeable harm to Cooteys. If injury to Cooteys was foreseeable and the development unreasonably interfered with the surface water under the circumstances of the case,[10] then the duty was breached and Developers would be liable for damages proximately caused thereby.

Under the above principles, then, Developers' liability to Cooteys is dependent upon whether their actions exposed Cooteys to an unreasonable risk of foreseeable harm.

---

[10]In *Rodrigues* at 165 n.5, 472 P.2d at 516 n.5, the supreme court stated that the circumstances that may be considered include: "the nature and importance of improvements made, the reasonable foreseeableness of the injury, the extent of interference with the water, the amount of injury done to other landowners compared to the value of the improvements."

We turn now to the question of causation.

## CAUSATION

Defendants argue that their actions were not the proximate cause of Cooteys' damages. They contend that their evidence showed that the flooding of Cooteys' property was caused in each instance by extraordinarily heavy rains, and that Cooteys' property, being the lowest point in the drainage basin, would have flooded in those rains anyway, even if Puukapu Acres had not been developed.

"Under the common law, a person who has sustained injuries due to the negligent conduct of another may recover against the tortfeasor provided that the negligent behavior was the proximate cause of the injuries suffered." *Ono v. Applegate,* 62 Haw. 131, 137, 612 P.2d 533, 538 (1980) (citations omitted).

The supreme court, in considering the question of whether or not one person's actions may be the proximate cause of another's injury, stated, in *McKenna v. Volkswagenwerk,* 57 Haw. 460, 464-65, 558 P.2d 1018, 1022 (1977):

In *Mitchell v. Branch & Hardy,* 45 Haw. 128, 363 P.2d 969 (1961), we adopted the following test of legal cause:

The best definition and the most workable test of proximate or legal cause so far suggested seems to be this: "The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm." Restatement, Torts, § 431; Prosser on Torts, § 47.

This test represents a realistic approach to problems of causation, an area which has long been complicated by a failure to distinguish between questions of fact and policy concerns. The first arm of the test contemplates a factual determination that the negligence of the defendant was more likely than not a substantial factor in bringing about the result complained of. *See* Prosser on Torts § 41 (4th ed. 1971). . . . [U]nder the "substantial factor" test a negligent party will not automatically escape liability merely because other causes have contributed to the plaintiff's injury. The inquiry under the first arm of the *Mitchell* test is essentially whether the act of the defendant was a cause in fact of the plaintiff's injury. A finding of

factual causation is essential to the imposition of liability, yet the inquiry must not stop with this factual determination.

The second arm of the *Mitchell* test contemplates inquiry whether there are policy concerns or rules of law that would prevent imposition of liability on the negligent party although his negligence was clearly a cause of the resultant injury.

Defendants contend that the natural topography of the area and the unusual rains caused the damage; that the rains were really an "act of God" that relieved them of any liability.

In *Cabral v. City and County of Honolulu*, 32 Haw. 872 (1933), the city argued that damage to plaintiffs' property occurred during a rainstorm of such intensity that it could not have foreseen that the city's drainage culvert would be inadequate to carry away the runoff water and, therefore, plaintiffs' damage resulted from an act of God. The supreme court held that the evidence as to foreseeability was conflicting and the lower court's finding after a bench trial that the heavy rain was foreseeable was not clearly erroneous.

In this case, as in *Cabral,* the question is whether the rains that occasioned the damage to Cooteys' property were foreseeable. Questions of proximate cause are factual questions not ordinarily susceptible of summary adjudication. *Johnson v. Robert's Hawaii Tour, Inc.,* 4 Haw. App. 175, 664 P.2d 262 (1983).

### SUFFICIENCY OF EVIDENCE AS TO FORESEEABILITY AND CAUSATION

In the light of the above principles, we examine the record to determine whether the evidence and any reasonable inferences therefrom, viewed in the light most favorable to Cooteys, would justify a jury's conclusion that the Defendants' actions created an unreasonable risk that Cooteys' home would be subjected to flooding in heavy rainstorms and whether the rainstorms that occurred were foreseeable.

Cooteys' evidence showed that they had not suffered any flooding until after Puukapu Acres was developed. Thereafter, their home was flooded on five occasions during unusually heavy rains. That the floods were caused by surface water runoff from Puukapu Acres is undisputed. Regarding the intensity of the rains, Mr. Cootey testified that he had lived in the Waimea district of Hawaii all of his life and, while the rains in question were heavy, he had also seen heavy rains at earlier times

when he was a boy. He further testified that since he moved into his home in 1972, "It always rains." Mr. Cootey stated that some of the rains that fell between 1972 and 1978 were heavy but caused no flooding, although on some occasions the rain caused some "pooling" which remained for about 24 hours.

County's expert witness, Mr. Thomas Nance (Nance), a civil engineer and an expert in hydraulics and hydrology, testified that he had examined rainfall data from two rainfall gauges in the proximity of Puukapu Acres and determined that the rainfall on the occasion of each flooding was unusually heavy. Also, the entire 16-month period from the first to the last flooding was one of unusually heavy rain.

Nance also testified that the topography of the area was such that, even if the subdivision had not been developed, Cooteys' property would have flooded in those rains. In his investigation prior to trial, Nance had had a private engineering firm conduct a topographical survey of the area surrounding Cooteys' property and Puukapu Acres to determine the area of land (the drainage basin) that would contribute runoff rain water to the natural flow, and the direction and course of that natural flow. He also conducted a line level survey for that purpose.

Nance's investigation showed that the natural drainage basin was approximately 62 acres. The runoff from those 62 acres would flow into the natural watercourse within Puukapu Acres and remain in that watercourse until it ended up on Cooteys' property. The topographical survey also indicated that Cooteys' property is the lowest point in the drainage basin and was the "sump" into which all the surface water would flow.

Nance further testified that the drainage system itself did not add to the volume of runoff. The 15-inch pipe was placed in the same natural watercourse through which the surface water normally flowed before Puukapu Acres was developed. Its purpose was only to convey the water from one side of the road to the other. When the water emerged from the pipe, it was still in the same natural watercourse.

However, Nance also testified that Puukapu Acres' development added two acres to the drainage basin and contributed an additional 23% to the runoff water. That 23%, however, was reduced in volume by the time it reached Cooteys' home so that it contributed only 10% to the height of the water in the home. The increase in volume accounted for only approximately 1/2 to 1-1/2 inches of the 10 to 11-1/2 inches of water that accumulated in Cooteys' home.

## CONCLUSION

The evidence was such that a jury could reasonably find that, had Developers conducted a proper drainage study, they could have foreseen that Cooteys' property was subject to flooding in heavy rains and that their development, by increasing the volume of runoff water by 23%, might increase the risk of danger to Cooteys. A jury also could reasonably find on the basis of Cooteys' testimony that the rains, though concededly unusually heavy, were foreseeable. Finally, for those same reasons, the jury could also reasonably find that County was negligent in approving the subdivision. Therefore, the jury could have reasonably made the ultimate finding that, considering all the circumstances, Defendants had breached their duty to avoid subjecting Cooteys to an unreasonable risk of foreseeable harm, and that their negligence was the legal cause of Cooteys' damage.

The evidence is not so clear that one can say that the only conclusion the jury could reach was that Defendants were not liable. Cooteys were entitled to have the issues presented to the jury on the proper instructions.

Reversed and remanded.

*William J. Rosdil* (*Greg K. Nakamura* with him on the briefs; *William J. Rosdil,* attorney at law, a law corporation, of counsel) for plaintiffs-appellants.

*Carleton B. Reid* (*John C. Wong* with him on the brief; *Davis, Playdon, Reid & Richards* of counsel) for defendant-appellee Sun Investment, Inc.

*Sandra E. Pechter,* Deputy Corporation Counsel, County of Hawaii, for defendant-appellee County of Hawaii.

*Kenneth K. Fukunaga* (*Tom C. Leuteneker* with him on the brief; *Carlsmith, Carlsmith, Wichman & Case* of counsel) for defendant-appellee JHK Tanaka, Inc.

*Colleen K. Hirai,* Deputy Corporation Counsel, City & County of Honolulu; *Lee A. Ohigashi,* Deputy Corporation Counsel, County of Maui; and *Warren C. K. Perry,* Second Deputy County Attorney, County of Kauai, on the brief for City & County of Honolulu, County of Maui, and County of Kauai, respectively, joint amicus curiae.