947 P.2d 378

The KAHANA SUNSET OWNERS AS-SOCIATION, Appellant/Plaintiff–Appellant,

v.

The COUNTY OF MAUI; the Maui Planning Commission; Herbert Sakakihara, in his capacity as Chairperson of the Maui Planning Commission; and JGL Enterprises, Inc., Appellees/Defendants–Appellees.

No. 19588.

Supreme Court of Hawai'i.

Nov. 5, 1997.

Isaac Hall, Wailuku, on the briefs, for appellant/plaintiff-appellant.

William H. Dodd and Curtis L. Sano of Chun, Kerr, Dodd, Beaman & Wong, and B. Martin Luna and Randall Endo of Carlsmith Ball Wichman Case & Ichiki, on the briefs, Honolulu, for appellee/defendant-appellee JGL Enterprises, Inc.

Gary W. Zakian, Deputy Corporation Counsel, on the briefs, for appellees/defendants-appellees County of Maui; Maui Planning Commission; and Herbert Sakakihara, in his capacity as Chairperson of the Maui Planning Commission.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

NAKAYAMA, Justice.

Plaintiff-appellant The Kahana Sunset Owners Association (KSOA) appeals from the

ruling of the circuit court affirming the Maui Planning Commission's decision, which (1) concluded that an environmental assessment was not required for defendant-appellee JGL Enterprises, Inc.'s proposed Napilihau Villages development project and (2) granted a Special Management Area (SMA) use permit to JGL Enterprises. Because the Commission erred in holding that an environmental assessment was not required, we vacate the grant of the SMA permit and remand for further consideration after the completion of the required environmental assessment.

## I. *BACKGROUND*

On October 12, 1992, defendant-appellee JGL Enterprises, Inc., filed an application for a SMA permit pursuant to Hawai'i Revised Statutes (HRS) Chapter 205A, preparatory to development of Napilihau Villages I, II, III and IV, a 312–unit multi-family residential development at Nāpili on the island of Maui. On November 23, 1993, the Maui Planning Commission held a public hearing on the SMA application and JGL's related application for a change in zoning. On December 7, 1993, the Commission granted plaintiff-appellant KSOA's [1] petition to intervene. A contested case hearing on the granting of the SMA permit was held over the course of thirteen days, between August 22 and September 15, 1994.

On February 14, 1995, the Maui Planning Commission filed its decision and order granting the SMA permit. Two commissioners dissented from this decision. As part of the decision and order, the Commission concluded that no environmental assessment was required for the project pursuant to the Hawai'i Environmental Policy Act (HEPA), HRS Chapter 343. KSOA appealed the Commission's decision to the circuit court. By order, filed January 10, 1996, the circuit court affirmed the Commission's findings of fact, conclusions of law, decision, and order. KSOA timely appealed the circuit court's ruling.

## II. *DISCUSSION*

### A. *The Commission Erred in Concluding that an Environmental Assessment was not Required*

■ Appellate review by this court of a decision made by the circuit court upon its review of an agency's decision constitutes a secondary appeal. In a secondary appeal, the standard of review is one in which this court

must determine whether the [circuit] court was right or wrong in its decision, applying the standards set forth in HRS § 91–14(g) to the agency's decision. [This court's] review is further qualified by the principle that the [agency's] decision carries a presumption of validity and [a]ppellant has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences.

*Hardin v. Akiba,* 84 Hawai'i 305, 309–10, 933 P.2d 1339, 1343–44 (1997) (*quoting University of Hawai'i Professional Assembly v. Tomasu,* 79 Hawai'i 154, 157, 900 P.2d 161, 164 (1995)) (citation omitted) (brackets in original).

The standard of review for the circuit court's review of the hearing officer's decision is mandated by HRS § 91–14(g) (1993), which provides in relevant part:

Upon review of the record the court may . . . reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

. . . .

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Moreover, we have observed that:

[a]ppeals taken from findings [of fact] set forth in decisions of the Board are re-

---

1. The Kahana Sunset is an apartment complex located makai of the proposed Napilihau development. KSOA is an association of owners of Kahana Sunset apartments, which is registered with the State of Hawai'i pursuant to HRS § 514A–95.1.

viewed under the clearly erroneous standard. Thus, the court considers whether such a finding is [c]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record[.] The clearly erroneous standard requires the court to sustain the Board's findings unless the court is left with a firm and definite conviction that a mistake has been made.

A conclusion of law ... is not binding on an appellate court and is freely reviewable for its correctness. Thus, the court reviews [conclusions of law] *de novo*, under the right/wrong standard.

*Bumanglag v. Oahu Sugar Co., Ltd.*, 78 Hawai'i 275, 279, 892 P.2d 468, 472 (1995) (quoting *Tate v. GTE Hawaiian Tel. Co.*, 77 Hawai'i 100, 102–03, 881 P.2d 1246, 1248–49 (1994) (brackets in original)).

KSOA claims that the Commission erred in concluding that an environmental assessment was not required for this project. The Commission's conclusions of law on this issue are that:

15. The Office of Environmental Quality Control has granted certain exemptions to [HRS Chapter 343] requested by the County of Maui. Exemption class # 6, "Construction or placement of minor structures accessory to existing facilities," includes "[i]nstallation of drains, sewers and waterlines within streets and highways."

16. At the special meeting of the Planning Commission on August 12, 1994, the Planning Director explained: ... To put a culvert under a public roadway outside of that shoreline setback area as part of a special management area permit does not trigger anything under [HRS Chapter 205A] with respect to a[n] environmental assessment.

I think the question arises here is that whether or not the work that would be required to install whatever drainage under whatever public roadway constitute a development in of itself or is contained within this entire special management area application. So I think the determination as to whether or not an environmental assessment is triggered by putting a culvert under a public roadway within public lands is going to be determined by the Department of Public Works not by this commission.

17. The Hawai'i Administrative Rules [HAR] support the interpretation of the Planning Director. The [HAR] for environmental impact statements ("EIS") delegate authority for requiring a statement "with the agency initially receiving the request for an approval." [HAR] § 11–200–4(b). The exemptions at issue here were proposed by the County of Maui in accordance with [HAR] § 11–200–8(d) ("Each agency, through time and experience shall develop its own list of specific types of actions which fall within the exempt classes, as long as these lists are consistent with both the letter and intent expressed in these exempt classes and Chapter 343, [HRS] )." [HRS] § 343–6(a)(7) . . . .

18. At the contested case, JGL Enterprises' consultants testified that pipes would be added to the existing drainage system along Napilihau Road that leads to the culvert on Lower Honoapi'ilani Road, which would also be improved. Brewer testified that he did not see a trigger for an environmental assessment given the scope of the project.

19. There is no agreement to make improvements to the Alaeloa drainage system and therefore there is no work in the shoreline setback area. Because there is no work in the shoreline setback area to trigger an environmental assessment under [HRS Chapter 343], the exemption applies and no environmental assessment is required due to the work in the County roadway.

KSOA claims that the Commission erroneously interpreted HEPA and its associated administrative regulations. Defendant-appellee JGL Enterprises argues that (1) the Commission's interpretation of the rules regarding whether an environmental assessment is necessary should be given deference as a matter within its area of expertise; (2) the Commission's conclusion that the project is exempt was correct; and (3) only the proposed drainage project should be considered in determining whether an environmental assessment is required. Defendant-ap-

pellee County of Maui argues that (1) this court lacks jurisdiction over the determination whether an environmental assessment is required because the judicial action challenging the agency's determination was not timely; and (2) the lack of an environmental assessment is not grounds to overturn the grant of the SMA permit because it did not prejudice KSOA's substantial rights and any procedural defect was cured by KSOA's participation in the contested case hearing. Before addressing defendants' specific arguments, it behooves us initially to revisit HEPA's structure and purpose.

## 1. General Overview of HEPA

HEPA was enacted in 1974. "Our legislature recorded a general policy on environmental concerns in HRS Chapter 344 and established specific action-forcing procedures for the implementation of the policy, created an environmental quality commission, and provided for the development and publication of information on environmental decisions in Chapter 343." *Molokai Homesteaders Co-op. Ass'n v. Cobb*, 63 Haw. 453, 463, 629 P.2d 1134, 1142 (1981). The findings and purpose of HEPA are set out in HRS § 343-1 (1993). This section states that:

The legislature finds that the quality of humanity's environment is critical to humanity's well being, that humanity's activities have broad and profound effects upon the interrelations of all components of the environment, and that an environmental review process will integrate the review of environmental concerns with existing planning processes of the State and counties and alert decision makers to significant environmental effects which may result from the implementation of certain actions. The legislature further finds that the process of reviewing environmental effects is desirable because environmental consciousness is enhanced, cooperation and coordination are encouraged, and public participation during the review process benefits all parties involved and society as a whole.

It is the purpose of this chapter to establish a system of environmental review which will ensure that environmental con-cerns are given appropriate consideration in decision making along with economic and technical considerations.

HEPA is triggered whenever an agency or an applicant proposes an action which falls within one of eight categories set forth in HRS § 343-5(a) (1993). This section unequivocally states that "an environmental assessment *shall* be required" for these actions. HRS § 343-5(a) (emphasis added). The general rule that environmental assessments are required for all proposed actions is qualified by HRS § 343-6(a)(7) (1993), which provides for exemptions for certain classes of actions, which, "because they will probably have minimal or no significant effects on the environment, are declared exempt from the preparation of an assessment." HRS § 343-6(a)(7). HRS § 343-5(c) (1993) provides that

[w]henever an applicant proposes an action specified by subsection (a) which requires approval of an agency, and which is not a specific type of action declared exempt under section 343-6, the agency receiving the request for approval shall prepare an environmental assessment of such proposed action at the earliest practicable time to determine whether an environmental impact statement shall be required. For environmental assessments for which a negative declaration is anticipated, a draft environmental assessment shall be made available for public review and comment for a period of thirty days.

The environmental assessment is a preliminary, informational document, which is intended to provide sufficient information to allow the accepting authority to determine whether "the anticipated effects constitute a significant effect in the context of [HEPA]." HAR § 11-200-10 (1996). If a determination is made, based on the environmental assessment, that the subject action will not have a significant effect, a "negative declaration" is issued by the accepting agency. The public has thirty days from that point to review and comment on this proposed negative declaration. If the action is determined, based on the environmental assessment, to have a sig-

nificant effect,[2] then a more in-depth document, termed an environmental impact statement, is required.

Without an environmental assessment, the agency and the public are not provided with the necessary information to determine the potential environmental significance of a proposed action. Unless the project is exempt under HRS § 343–6(a)(7), as implemented in HAR § 11–200–8, preparation of an environmental assessment is mandatory. This environmental assessment is to be prepared at the "earliest practicable time." HRS §§ 343–5(b) and (c) (1993).

### 2. *This Project Does Not Fall Within An Exemption to HEPA.*

HAR § 11–200–8(a) (1996) provides a list of specific types of actions, which, pursuant to HRS § 343–6(a)(7), will probably have minimal or no significant effect on the environment. The rules provide that these actions "shall generally[3] be exempted from the preparation of an environmental assessment." HAR § 11–200–8(a). The rule sets out nine specific classes of exemptions. The Commission relied on HAR § 11–200–8(a)(6), which generally exempts "construction or placement of minor structures accessory to existing facilities."

Pursuant to HAR § 11–200–8(d),

[e]ach agency, through time and experience, shall develop its own list of specific types of actions which fall within the exempt classes, as long as these lists are consistent with *both the letter and intent* expressed in these exempt classes and [HEPA].... These lists ... shall be submitted to the [environmental] council for review and concurrence.

(Emphasis added.) The Maui Planning Commission, pursuant to this section, has submitted to the environmental council, and the council approved, a list of actions, including "[i]nstallation of drains, sewers and waterlines within streets and highways." This must be read as a sub-class of the larger exemption contained within HAR 11–200–8(a)(6).

The proposed Napilihau development would install a new, 36–inch drainage line beneath Napilihau Street, connecting to an existing 24–inch culvert beneath Lower Honoapiʻilani Highway. It is undisputed that this constitutes "use of state or county lands," which is within the class of actions that triggers HEPA. HRS § 343–5(a)(1). An environmental assessment is therefore mandatory, unless the project falls within an exemption.

█ The administrative rules provide for an exemption for "minor structures accessory to existing facilities." HAR § 11–200–8(a)(6). The exemption approved by the council for "installation of drains within streets and highways" must be consistent with both the letter and the intent contained within the administrative rule exemption. Therefore, the council exemption, as a sub-class of the larger exemption, must be interpreted as exempting minor drains accessory to existing facilities. This is the only interpretation that is consistent with the letter of the exemption contained in the rule.

█ The intent of the exemption list is made even more apparent when the other exemptions are studied. This court must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose. *State v. Toyo-*

---

**2.** HRS § 343–2 defines "significant effect" as:
the sum of effects on the quality of the environment, including actions that irrevocably commit a natural resource, curtail the range of beneficial uses of the environment, are contrary to the State's environmental policies or long-term environmental goals as established by law, or adversely affect the economic or social welfare.
HAR § 11–200–12 further delineates the criteria that agencies must consider in determining the effects of a proposed action.

**3.** Not all actions that fall within one of the delineated exemption classes are exempt from the preparation of an environmental assessment. HAR § 11–200–8(b) provides that "[a]ll exemptions under the classes in this section are inapplicable when the cumulative impact of planned successive actions of the same type, in the same place, over time, is significant, or when an action that is normally insignificant in its impact on the environment may be significant in a particularly sensitive environment."

*mura,* 80 Hawai'i 8, 904 P.2d 893 (1995). The rules exempt, *inter alia,*

> (1) Operations, repairs or maintenance of existing structures, facilities, equipment, or topographical features, involving negligible or no expansion or change of use beyond that previously existing;

> (2) Replacement or reconstruction of existing structures and facilities where the new structure will be located generally on the same site and will have substantially the same purpose, capacity, density, height and dimensions as the structure replaced; [and]

> . . . .

> (5) Basic data collection, research, experimental activities which do not result in a serious or major disturbance to an environmental resource[.]

HAR § 11–200–8 (1996). It is apparent from the context of the exemptions that the regulations intend to exempt only very minor projects from the ambit of HEPA. A completely new drainage system, serving over 300 residences, is qualitatively incompatible with the type of projects contained in this list of exemptions. Therefore, an exemption for this project from the requirements of HEPA is inconsistent with both the letter and intent of the administrative regulations. This court reviews conclusions of law *de novo.* Where the administrative agency's conclusion of law is plainly erroneous and inconsistent with both the letter and intent of the statutory mandate, the agency's decision is not entitled to deference. *International Bhd. v. Hawaiian Tel. Co.,* 68 Haw. 316, 322, 713 P.2d 943, 950 (1986).

Allowing the Maui Planning Commission's interpretation would be to approve a categorical finding that any drain installed within a street is not going to have a significant environmental impact. This reading is inconsistent with both the letter and the intent of HEPA.[4]

We have previously stated that

an EIS under [HEPA] is an informational document ... which discloses the environmental effects of a proposed action, effects of a proposed action on the economic and social welfare of the community and the State, effects of the economic activities arising out of the proposed action, measures proposed to minimize adverse effects, and alternatives to the action and their environmental effects.

*Molokai Homesteaders,* 63 Haw. at 463, 629 P.2d at 1142. The purpose of preparing an environmental assessment is to provide the agency and any concerned member of the public with the information necessary to evaluate the potential environmental effects of a proposed action. The public comment and notification provisions of HEPA underscore the legislative intent to provide broad-reaching dissemination of proposed projects so that the public may be allowed an opportunity to comment and the agency will have the necessary information to understand the potential environmental ramifications of their decisions. A full-scale environmental impact statement is not required unless the initial determination is made that a project will have significant environmental effects. However, in the absence of the preliminary environmental assessment, the legislative intent that potential effects be studied and the public notified is undercut.

Defendant-appellee County of Maui does not attempt to argue that the lack of an environmental assessment was warranted by law. The County admits that "[t]he lack of an environmental assessment in this instance might be error." Defendant County of Maui's Answering Brief at 18. In urging this court to nevertheless affirm the Commission's decision despite the lack of the required environmental assessment, the County argues that (1) this court lacks jurisdiction because the judicial action was not timely filed and (2) KSOA's participation in the contested case hearing cured the lack of an environmental assessment and there was no

---

4. We note that the administrative rules were amended on August 31, 1996, to narrow administrative agencies' authority to declare projects exempt from HEPA. HAR § 11–200–8 (1996) now states that "agencies declaring an action exempt under this section shall obtain the advice of other outside agencies or individuals having jurisdiction or expertise as to the propriety of the exemption."

prejudice to justify overturning the agency's decision. These arguments are meritless.

### 3. KSOA's HEPA Challenge Was Timely.

█ HRS 343–7(a) (1993) provides that "[a]ny judicial proceeding, the subject of which is the lack of assessment required under section 343–5, shall be initiated within one hundred twenty days of the agency's decision to carry out or approve the action." In the instant case, the Maui Planning Commission's decision to grant the SMA permit is the operant date triggering the time period of HRS § 343–7(a). The Commission's decision was dated February 14, 1995. The notice of appeal to circuit court was filed on February 21, 1995, seven days after the agency's decision. This is well within the one hundred twenty days allowed by the statute.

The County of Maui argues that the time period began to run on August 12, 1994, when the Commission first made the express determination that no environmental assessment was required for the project. Nothing in the plain language of HRS § 343–7(a) supports this contention. The language states that the period runs when the agency decides to "carry out or approve the action." No action was approved at the time the Commission first announced that no environmental assessment was required for the project.

The County's interpretation of the statute, in addition to having no basis in the statutory language, would make no sense in the context of this case. The necessity for an environmental assessment was a point of contention in the contested case hearing. The Maui Planning Commission, in its decision and order filed February 14, 1995, made the determination that no environmental assessment was necessary. To require KSOA to file a circuit court action at the same time that the Commission was conducting its contested case on the identical issue would be redundant and a waste of judicial resources. For the above reasons, we hold that KSOA's challenge to the lack of an environmental assessment was timely.

### 4. An Environmental Assessment is a Necessary Condition Precedent to the Grant of an SMA Permit

█ The County of Maui argues that the lack of an environmental assessment is not grounds for overturning the grant of the SMA permit because the substantive issues were raised in the contested case hearing and any procedural defect was cured by KSOA's participation in the contested case hearing. The County asserts that "the only items not done in the context of the contested case that would be required if an environmental assessment were done are the procedural items. The purpose of the procedural aspects of HRS chapter 343 is to give those interested the opportunity to comment." County of Maui's Answering Brief at 16. "The commission considered all of the material required for an environmental assessment, even though it was not officially denominated as an environmental assessment pursuant to [HEPA]." Id. at 18.

HEPA contains a fixed scheme of public notice that is required when an environmental assessment is prepared. If a negative declaration is anticipated, a draft environmental assessment must be made available for public review and comment for a period of thirty days. HRS §§ 343–5(b) and (c). HRS § 343–3 mandates that all environmental assessments be made available for inspection by the public during office hours. A bulletin is published by the Office of Environmental Quality Control containing notices of availability of environmental assessments, and any interested member of the public may view the document and comment.

HRS § 343–5(c) provides that "acceptance of a required final statement shall be a condition precedent to approval of the request and commencement of proposed action." Where the legislative mandate is clear, we will not excuse compliance with the plain language of the statute based on appellees' assertion that the information adduced in the contested case hearing was the functional equivalent of the required environmental assessment.

In Pearl Ridge Estates v. Lear Siegler, 65 Haw. 133, 648 P.2d 702 (1982), Lear Siegler, Inc. filed a Petition for Boundary Amendment From Conservation to Urban with the

Land Use Commission requesting rezoning of 8.4 acres. No environmental assessment was prepared. A contested case hearing was held on the matter, and the Land Use Commission issued a Decision and Order reclassifying the land. On appeal, we reversed the reclassification and remanded for the preparation of an environmental assessment. The attendance of appellant at the contested case hearing did not excuse the lack of compliance with HEPA once the determination was made that an environmental assessment should have been prepared.

The burden of preparing an environmental assessment is on the applicant. HRS § 343–5(c). Allowing the participation in a contested case hearing to excuse lack of compliance with HEPA would effectively shift this burden to concerned members of the public. Additional studies and examination of alternatives, which were not undertaken, may be required pursuant to HAR § 11–200–10. The Commission found that "[n]othing prevents [KSOA] from hiring an expert to do a marine study." It appears from a review of the record that the burden is on JGL to do a marine study as part of the required environmental assessment pursuant to HAR § 11–200–10. Therefore, the substantive rights of KSOA were prejudiced by the improper shifting of the burden of evaluating environmental impacts in the absence of the required environmental assessment.

The Commission did not make a finding that the information presented at the contested case was the equivalent of an environmental assessment. The Commission is the administrative agency with the statutory responsibility and expertise to administer the mandates of HEPA. It would be overly speculative for this court to make a determination as to whether the information adduced at the contested case hearing was the functional equivalent of the required environmental assessment. Therefore, we will not excuse the lack of an environmental assessment on this basis.

5. *The Proper Scope of the Environmental Assessment is the Entire Napilihau Development*

■ KSOA argues that, if an environmental assessment is required, the document must address the environmental effects of the entire proposed development, not just the drainage system. KSOA's assertion is correct.

When a proposed project triggers HEPA because the action falls within one of the delineated categories, an environmental assessment must be prepared. HAR § 11–200–7 provides that "[a] group of actions proposed by an agency or an applicant shall be treated as a single action when: (1) The component actions are phases or increments of a larger total undertaking; [or] (2) An individual project is a necessary precedent for a larger project." In the instant case, the action proposed by JGL is the entire Napilihau development. The proposed drainage system is part of the larger project and is a "necessary precedent" for the development. The drainage system has no independent utility. It would not be constructed except as part of the larger development. Isolating only that particular component of the development for environmental assessment would be improper segmentation of the project.

6. *The Commission's Attempt to Defer Decision on Preparation of an Environmental Assessment to the Department of Public Works was Erroneous.*

■ The Commission's conclusions of law state in relevant part that:

I think the question arises here is that whether or not the work that would be required to install whatever drainage under whatever public roadway constitute a development in of itself or is contained within this entire special management area application. So I think the determination as to whether or not an environmental assessment is triggered by putting a culvert under a public roadway within public lands is going to be determined by the Department of Public Works not by this commission.

HRS § 343–5(c) provides:

Whenever an applicant proposes an action specified by subsection (a) which requires approval of an agency, and which is not a specific type of action declared exempt un-

der section 343–6, *the agency receiving the request for approval* shall prepare an environmental assessment of such proposed action at the earliest practicable time.

(Emphasis added.) As explained *supra* in section E, the action for purposes of HEPA is the proposed Napilihau development. The Commission is the agency receiving the request for approval of the action, and it is therefore the agency responsible for preparation of the environmental assessment. Attempting to delegate this responsibility to the Department of Public Works was erroneous.

B. *Other Issues*

KSOA raises seven other points of error on appeal. These issues relate to the decision of the Commission and procedural matters raised during the contested case hearing. Because we vacate the grant of the SMA permit, we do not reach the remaining issues, with one exception. Although it does not affect our disposition of this appeal, all parties to this case are apparently confused as to the law governing surface water in Hawai'i. For informational purposes, we address this issue to clarify the parties' misconceptions.

KSOA claims that the proposed drainage plan is illegal because JGL does not have authority to discharge increased runoff into KSOA's private system. The Commission concluded that:

> Hawaii law has long recognized that mauka landowners may cause surface water to flow in its natural direction through a drainway onto a makai owner's land. "The common-law doctrine is that surface water is a 'common enemy'; that causing surface water to flow in its natural direction through a ditch on one's own land ... is not a wrongful act...." *Carter v. Hawaii County,* 47 Haw. 68, 74–76, 384 P.2d 308 (1963); *Hamilton v. County of Hawai'i,* 40 Haw. 193 (1953).

The Commission and all parties in this case fail to recognize that the "common enemy" doctrine announced in Hawai'i in *Hamilton* was renounced by this court in *Rodrigues v. State,* 52 Haw. 156, 472 P.2d 509 (1970). In *Rodrigues,* almost thirty years ago, this court reevaluated the law of surface water in Hawai'i. *See also Cootey v. Sun Investment, Inc.,* 6 Haw.App. 268, 690 P.2d 1324, *cert. granted* 67 Haw. 685, 744 P.2d 781 (1984), *reversed in part,* 68 Haw. 480, 718 P.2d 1086 (1985). We recognized in *Rodrigues* that three rules have been adopted by the various states regarding the disposal of surface water: (1) the common enemy rule; (2) the civil law rule; and (3) the reasonable use rule. This court held that "our decisions so closely approach the reasonable use rule that it is incumbent upon us to adopt it." *Rodrigues,* 52 Haw. at 166, 472 P.2d at 516. The reasonable use rule "allows each possessor of land to alter the flow of surface water so long as his interference with the flow is not unreasonable under the circumstances of the particular case." *Id.* at 163, 472 P.2d at 515.

KSOA does not cite any other authority in support of its contention that the proposed drainage system is unlawful. Upon reconsideration of the SMA permit, the Commission must evaluate the reasonableness of the proposed alteration to the flow of surface water pursuant to *Rodrigues.*

## III. *CONCLUSION*

For the foregoing reasons, we vacate the Commission's grant of the SMA permit to defendant-appellee JGL Enterprises, Inc. and remand this case for proceedings consistent with this opinion.