JOSEPH McKENNA, et al., Plaintiffs-Appellants *v.* VOLKSWAGENWERK AKTIENGESELLSCHAFT, et al., Defendants-Appellees, and STATE OF HAWAII, Defendant

NO. 5655

JANUARY 18, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KIDWELL, J.

In this action the parents and personal representatives of two sisters, who were killed in the collision of two automobiles, sought damages from the appellee (City) and others not parties to this appeal. At the close of a jury trial, a directed verdict and judgment was entered for the City and plaintiffs appeal. The appeal presents the question whether the intoxication of one of the drivers and his alleged excessive speed, as a matter of law, insulated the City from liability predicated on its defective maintenance of the highway shoulder. We hold that the question was for the jury and the directed verdict was in error.

I.

The record discloses that this accident took place on Kamehameha Highway in the vicinity of the Heeia Kea pier. It was admitted that the maintenance and care of the roadway and mauka shoulder of the highway in the area where the accident occurred was the responsibility of the City. There was evidence from which the jury could have found that an automobile driven by one Chartrand, who was also killed in the accident, while approaching the sisters' automobile, which was traveling in the makai lane, partially left the paved portion of the highway so as to be progressing with the right wheels on the mauka shoulder of the highway. Witnesses described the car as bouncing along the shoulder and then veering across the mauka lane of the two-lane highway into the sisters' car, which exploded and burned. There was evi-

dence from which the jury could have found that there were ruts and holes in the shoulder adjacent to the pavement and that the pavement was somewhat higher than the adjacent shoulder. The accident occurred at night and was observed by the driver of another car, who testified that he was not able to give an estimate of the speed of the Chartrand car as it approached the sisters' car but admitted that he had earlier stated to counsel for the City that the Chartrand car had been traveling at 40 to 50 miles per hour before its right wheels left the paved highway. There was testimony that the posted speed limit at the place of the accident was 30 miles per hour.

The medical examiner of the City testified that he had performed an autopsy on Chartrand and had found a "blood alcohol" concentration of 224 milligrams per hundred cubic centimeters. The examiner also testified that, although a complete determination of intoxication requires clinical observation of the subject, medical investigation had found about a 100% correlation between clinical intoxication and a "blood alcohol" concentration similar to Chartrand's and that one commonly accepted method of judging intoxication by clinical observation is by use of "Jetter's criteria," under which a primary indication of drunkenness is an abnormality of gait or inability to walk. On the other hand, the medical examiner stated that a diagnosis of intoxication, even using Jetter's criteria, is a very subjective judgment which varies from individual to individual and that he could not determine the actual extent of impairment of Chartrand's gait. There was also testimony from a witness who had spent the afternoon and early evening with Chartrand and had talked with him and observed him get into his car shortly before the accident, that Chartrand walked in his regular way, spoke in his normal way, and was not drunk.

The City advances two propositions in support of the directed verdict: that (1) the intoxication of Chartrand was the proximate and superseding cause of the accident and that (2) the City had no obligation to make the highway shoulders safe for cars going in excess of the speed limit. Since we conclude that the trial court erred in directing a verdict for the City, we

will not consider the allegedly erroneous exclusion of certain testimony offered by the Appellants.

## II.

To properly assess the significance which should be given to the two propositions relied upon by the City to avoid liability, we need to examine the case against the City without consideration of the evidence of Chartrand's intoxication or speeding. As briefly set out above, the evidence on these points was equivocal and we are mindful that on a motion for a directed verdict, "the evidence and the inferences which may be fairly drawn from the evidence must be considered in the light most favorable to the party against whom the motion directed verdict, "the evidence and the inferences which manner are of such character that reasonable persons in the exercise of fair and impartial judgment may reach different conclusions upon the crucial issue, then the motion should be denied and the issue should be submitted to the jury." *Young v. Price*, 47 Haw. 309, 313, 388 P.2d 203, 206 (1963), *rehearing* 48 Haw. 22, 24, 395 P.2d 365, 367 (1964). Consequently, we must ask whether there were any other factors or circumstances in evidence which would support the trial court's removal of the issue of the City's liability from the jury's consideration.

The City raised no issue on appeal as to their duty to exercise ordinary care to keep safe the shoulders of the highway where the accident occurred and it is clear from our decision in *Terranella v. City & County*, 52 Haw. 490, 496, 479 P.2d 210, 214 (1971), that such a duty exists: "the duty imposed upon county authorities by HRS § 265-1 to maintain and repair all county highways includes the duty to also maintain and repair the shoulders of those highways". Thus the evidence, produced by plaintiffs, of ruts in the shoulder of the highway at the scene of this accident clearly raised an issue of fact with regard to the alleged negligence of the City's maintenance of the shoulder. Under *Terranella*, the resolution of this factual question by the jury would be determina-

tive of the City's negligence. In light of the above quoted language from *Young v. Price, supra,* in reviewing the directed verdict in favor of the City we must consider this factual question as resolved against the City and the City's negligence must be considered established.

With the City's negligence thus hypothetically established we must direct our inquiry to whether the assumed unsafe condition of the shoulders was a legal cause of the plaintiff's injuries. In *Mitchell v. Branch & Hardy,* 45 Haw. 128, 363 P.2d 969 (1961), we adopted the following test of legal cause:

> The best definition and the most workable test of proximate or legal cause so far suggested seems to be this: "The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm." Restatement, Torts, § 431; Prosser on Torts, § 47.

This test represents a realistic approach to problems of causation, an area which has long been complicated by a failure to distinguish between questions of fact and policy concerns. The first arm of the test contemplates a factual determination that the negligence of the defendant was more likely than not a substantial factor in bringing about the result complained of. *See* PROSSER ON TORTS § 41 (4th ed. 1971). In the instant case the circumstances disclosed by the evidence, even when the evidence of intoxication and speed is considered, clearly support an inference, which the jury could reasonably have drawn, that the driver of the Chartrand car lost control of the car and that the defective condition of the shoulder was a substantial factor in the loss of control. It is not necessary that the City's negligence be the whole cause or the only factor as under the "substantial factor" test a negligent party will not automatically escape liability merely because other causes have contributed to the plaintiff's injury. The inquiry under the first arm of the *Mitchell* test is essentially whether the act of the defendant was a cause in

.fact of the plaintiff's injury. A finding of factual causation is essential to the imposition of liability, yet the inquiry must not stop with this factual determination.

The second arm of the *Mitchell* test contemplates inquiry whether there are policy concerns or rules of law that would prevent imposition of liability on the negligent party although his negligence was clearly a cause of the resultant injury. Thus we must now focus our consideration on whether the intervening actions of Chartrand in the chain of causation relieved the City from liability under the second arm of the test.

### III.

The City urges that this court should find the actions of Chartrand to be a superseding cause[1] of the accident and thus insulate the City from liability. This raises a question of proximate or legal causation similar to the question before us in *Mitchell v. Branch & Hardy, supra.* In *Mitchell,* we had to determine whether the negligence of the driver of a vehicle which was forced off the road by the defendant's negligent obstruction of a highway was such a superseding cause of the accident as to insulate defendant's negligence from being a substantial factor in causing the injury. We held that the test was whether the driver's negligence was foreseeable by the defendant,[2] and quoted with approval the following:

---

[1] "A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence.is a substantial factor in bringing about." RESTATEMENT OF TORTS 2d § 440 (1965).

[2] Among other formulations of the test, we mentioned with approval RESTATEMENT OF TORTS § 447 (1934):

"§ 447. Negligence of Intervening Acts.

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a) The actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) A reasonable man knowing the situation existing when the act or the third

". . . It is a rare case where the court may hold, as a matter of law, that the intervening act breaks the chain of causation because whether it was reasonably foreseeable is a question of fact and not of law. The second act will break the chain of causation only where, under no rational interpretation of the evidence, could the later act of negligence have been reasonably foreseen." *Jones v. City of South San Francisco,* 96 Cal. App. 2d 427, 435, 216 P.2d 25, 30.

In directing a verdict for the City upon the record in this case, therefore, the trial court was required to find that the evidence did not admit of a reasonable inference that the accident, including the manner in which the Chartrand car participated in it, was a foreseeable result of the unsafe condition of the shoulder. Merely that the Chartrand car may have been negligently driven was not enough to insulate the City from liability, if the City should have foreseen that a car might be negligently driven so as to create, in combination with the City's negligence, the hazard which resulted. In *Terranella* we confirmed the duty owed by the City to maintain the shoulders of county highways, upon the premise that the City was required to foresee and provide for the possibility that a car might enter upon the shoulder in other than an emergency situation. An entry upon the shoulder which was the result of the driver's negligence cannot be rationally excluded from the occurrences of such entry which the City was required to foresee. Thus we cannot say, as a matter of law, that a degree of negligence which would result in the improper operation of a car so as to place its wheels on the shoulder could not have reasonably been foreseen by the City.

Does it make a difference in the application of these tests that the driver of the Chartrand car was intoxicated? In

person was done would not regard it as highly extraordinary that the third person had so acted, or

"(c) The intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

granting the City's motion for a directed verdict, the trial judge seems to have regarded the evidence of Chartrand's intoxication as conclusively establishing that his intervening act was not reasonably foreseeable, so that no question of fact remained for the jury under the *Mitchell* test. However, it is the element of faulty driving of the Chartrand car which introduces the question of intervening cause. Had the manner in which the Chartrand car was driven been wholly beyond criticism, the fact of Chartrand's intoxication would have been wholly irrelevant. It is only as it bears upon the question of the negligent operation of the Chartrand car that we are interested in the driver's condition in this case. It is the negligence of the driver which is significant and should be the subject of our inquiry, whether or not induced by intoxication.

Evidence of intoxication is generally admissible on the issue of negligence in a vehicle accident case. *See* Annot. 26 A.L.R. 2d 359 (1952). However, driving a car while under the influence of intoxicating liquor does not constitute actionable negligence or contributory negligence unless there is a causal relationship between the intoxication and the accident. In *Anderson v. Morgan*, 73 Ariz. 344, 241 P.2d 786 (1952), where the defendant driver was intoxicated but there was no substantial evidence that his operation of his truck proximately caused the accident, a judgment was directed for the defendant. In *Atkins v. Moye*, 277 N.C. 179, 176 S.E.2d 789 (1970), the plaintiff, one of the drivers in a vehicle accident, was intoxicated. Proof of this fact was held to be insufficient to establish contributory negligence without proof that his condition caused him to operate his automobile in a manner which constituted a proximate cause of the collision. As was said in *Landrey v. United Services Automobile Assn.*, 49 Wis. 2d 150, 158, 181 N.W.2d 407, 412 (1970), "Intoxication itself does not give rise to liability but only does so when combined with some act of causal negligence." While we are not here concerned with Chartrand's actionable or contributory negligence, the rationale of these cases is applicable. Although intoxication may be the cause of negligence, the question

whether the acts of an intoxicated person are negligent is not determined by the fact of his intoxication but requires consideration of his conduct under the circumstances.

There was evidence that Chartrand had been acting normally just prior to the accident. The evidence related to the alcoholic content of his blood was inconclusive as to its effect on his ability to operate his car. From the evidence before it (whatever our own intuition might tell us) the jury could have found that he was as able to operate the car competently as to speak and walk competently, and that his competence in these regards had not been significantly impaired by the alcohol he had consumed. It follows that the jury could have found that such negligence as may have existed in the operation of the Chartrand car was reasonably foreseeable by the City and did not, giving full effect to Chartrand's intoxication, constitute a superseding cause which relieved the City from liability. The evidence of intoxication did not enable the trial court to direct a verdict for the City.

IV.

There remains for consideration the City's contention that the speed of the Chartrand car was an exculpating factor. The City relies upon *Ikene v. State*, 54 Haw. 548, 511 P.2d 1087 (1973), in which we said that there was no duty to maintain a highway with a posted speed limit of 35 miles an hour in a safe condition for cars speeding in excess of 40 miles per hour.[3] If it be assumed that the speed limit which was in effect at the time and place of the accident was 30 miles per hour, nevertheless the only evidence of excessive speed of the Chartrand car consisted of witness Ray Smart's admission on cross-examination that he had earlier informed counsel for the City that he guessed that the Chartrand car was doing between forty and fifty at the time of the impact. In

---

[3] We do not consider whether it was incumbent upon the City to show that the shoulder was maintained in a safe condition for cars travelling at the speed limit, itself a question of fact for the jury.

further cross examination this witness stated that he was not able, at the time of the trial, to give an estimate of the speed of the Chartrand car as it was approaching the scene of the accident, either before it left the highway or as it was proceeding partially on and partially off the highway. Witness Violet Smart, who also observed the accident, testified that immediately before it occurred she did not think there was going to be an accident, because "everybody was going so slow." In this state of the evidence, the excessive speed of the Chartrand car was at most the subject of conflicting testimony, if not wholly unproven. On the motion for a directed verdict, the trial court was required to consider this evidence and the inferences which might be drawn from it in the light most favorable to the plaintiffs and could not resolve the conflicts in the testimony against them. It follows that such evidence of excessive speed of the Chartrand car as was before the court did not enable it to direct a verdict for the City.

The judgment is reversed and the case is remanded for a new trial.

*Dennis E. W. O'Connor* and *Mark P. Bleuenstein (Anthony, Hoddick, Reinwald & O'Connor* of counsel) for Plaintiffs-Appellants.

*Edmund L. Lee, Jr.,* and *Robert E. St. Sure,* Deputies Corporation Counsel, for Defendant-Appellee, City and County of Honolulu.