ADAM ARMSTRONG, Petitioner-Appellant, *v.* JACK CIONE, Respondent-Appellee, and JOHN and JANE DOES 1-10, Defendants

NO. 10805

(CIVIL NO. 75020)

JUNE 1, 1987

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY LUM, C.J.

Petitioner Adam Armstrong ("Petitioner"), in his Application for Writ of Certiorari, alleges that two errors were committed by the Intermediate Court of Appeals: (1) the court erred in affirming the circuit court's conclusion that the jury did not reach an inconsistent verdict when it found Respondent-Defendant Jack Cione ("Respondent") was negligent in causing Petitioner's injury but did not breach Respondent's implied warranty of habitability; and (2) the court erred in holding that the circuit court's grant of a directed verdict against Petitioner's strict products liability claim was harmless error because our decision in *Kaneko v. Hilo Coast Processing*, 65 Haw. 447, 654 P.2d 343 (1982), requires application of the modified comparative negligence statute, Hawaii Revised Statutes ("HRS") § 663-31 (1985), to strict products liability claims.

We granted certiorari to review the Intermediate Court of Appeals' decision. *Armstrong v. Cione*, No. 10805 (Jan. 6, 1987). We affirm the Intermediate Court of Appeals as to the first alleged error, but vacate as to the second. Nonetheless, we affirm the circuit court's dismissal of Petitioner's strict product liability claims.

I.

Petitioner was injured when his hand went through the plate glass door of a shower in the one bedroom apartment he was renting from the Respondent. The apartment was part of a larger cooperative called the Waikiki Regent that was constructed in 1959. While the other nine apartments in the building were two bedroom units, Respondent's apartment had been converted to two one-

bedroom units. Respondent purchased the two units in 1981, and used one unit, 103-A, for office space and the other, 103-B, for storage.

Respondent eventually cleaned out unit 103-B and rented it to Tom Cesar. Cesar rented the unit until 1982 when his friend, Petitioner, took over the rental of the apartment. Petitioner was already familiar with the premises when he assumed the rental, as he had been a guest of Cesar's on several occasions.

Petitioner was injured on April 12, 1982 while attempting to close the shower door. The door was constructed of three panes of glass, two of which fold into the shower in a V-shaped pattern, pulling the third pane out of the way to permit entry and exit. The shower was built at the time of original construction of the apartment and the panes of glass were of ordinary glass instead of safety glass. Petitioner's hand slipped off the hinged portion of the door while attempting to push the door closed. The impact shattered the glass and cut his right arm.

It is unclear from the testimony at trial whether the parties inspected the apartment at the time Respondent took over the rental. However, Petitioner testified that prior to the accident, the pane of glass in question was visibly cracked. Petitioner also testified the shower door was always difficult to close, although neither tenant reported this to Respondent.

On April 12, 1985, Respondent moved for a directed verdict on all four of Petitioner's theories of liability: negligence, implied warranty of habitability, strict liability in tort, and products liability. *Armstrong*, slip op. at 3.[1] The trial court eventually granted Respondent's motion except as to the negligence and implied warranty of habitability claims. The lower court in granting the motion with respect to the products liability claim stated, "the Court has re-examined the *Bidar vs. Amfac, Inc.*, [case] and concludes as a matter of law that strict product liability and strict liability do not apply to the facts and circumstances of the case."

---

[1] Subsequent amendments to the Intermediate Court of Appeals' decision (dated January 16 and 28, 1987) did not require repagination of the opinion. Thus, all citations to the lower court's opinion apply to the January 6, 1987 opinion, although they include language from the later amendments.

The jury returned its verdict on the negligence and warranty of habitability claim. They found Respondent negligent but no breach of the warranty of habitability. Asked to "apportion the fault for Plaintiff's injuries between [the parties,]" the jury assigned 67% to Petitioner and 33% to Respondent. Judgment was entered in favor of Respondent.

On appeal to the intermediate court, Petitioner misconstrued the circuit court, arguing it erred by ruling Respondent was exempt from application of strict products liability as an "occasional seller." Respondent argued, inter alia, that strict products liability does not apply to a landlord for defects in the leased premises.

## II.

The Intermediate Court of Appeals held that even if the circuit court did err, it was harmless error. The intermediate court reached this result by holding *Kaneko v. Hilo Coast Processing,* 65 Haw. at 459-64, 654 P.2d at 351-54, requires application of the modified comparative negligence principles contained in HRS § 663-31 (1985).[2] As the court stated:

---

[2] HRS § 663-31 reads:

Contributory negligence no bar; comparative negligence; findings of fact and special verdicts. (a) Contributory negligence shall not bar recovery in any action by any person or the person's legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the negligence of the person or in the case of more than one person, the aggregate negligence of such persons against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made.

(b) In any action to which subsection (a) of this section applies, the court, in a nonjury trial, shall make findings of fact or, in a jury trial, the jury shall return a special verdict which shall state:

(1) The amount of the damages which would have been recoverable if there had been no contributory negligence; and

(2) The degree of negligence of each party, expressed as a percentage.

(c) Upon making of the findings of fact or the return of a special verdict, as is contemplated by subsection (b) above, the court shall reduce the amount of the award in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made; provided that if the said proportion is greater than the negligence of the person or in the case of more than

The *Kaneko* court does not cite HRS § 663-31; however, it is the only basis for application of the doctrine of comparative negligence in this jurisdiction and the court must have had it in mind. Therefore, effective merger of the two doctrines requires that all the provisions of HRS § 663-31 be applied to strict products liability cases, and the injured plaintiff cannot recover in such cases if the proportion of negligence attributed to him exceeds the proportion of negligence attributed to the defendant. Consequently, the jury's finding that Plaintiff was 67% negligent in causing his injuries defeats any recovery by him for strict products liability and any error by the trial court in directing a verdict on that claim was immaterial.

*Armstrong*, slip op. at 6-7.

### III.

### A.

After a careful review of our decision in *Kaneko, supra,* we hold that the Intermediate Court of Appeals misread and misapplied *Kaneko.* We hold that *Kaneko* applies to the instant case. Our omission of citation to HRS § 663-31 in *Kaneko* was purposive. Since the legislature has not occupied the field of law, we are free to fashion a rule of comparative negligence to suit our original purposes in adopting strict products liability. *See Yoshizaki v. Hilo Hospital,* 50 Haw. 150, 155 & n.7, 433 P.2d 220, 224 & n.7 (1967).

The plain meaning of the words of the statute itself indicates the legislature has not intended to reach this area of law. *See* note 2, *supra; Wong v. Hawaiian Scenic Tours, Ltd.,* 64 Haw. 401, 405, 642 P.2d 930, 933 (1982). Nonetheless, Respondent argues HRS § 663-31 applies given the continued viability of our modified comparative negligence statute in the face of this court's adoption

---

one person, the aggregate negligence of such persons against whom recovery is sought, the court will enter a judgment for the defendant.

(d) The court shall instruct the jury regarding the law of comparative negligence where appropriate.

of comparative negligence principles to strict products liability, and the failure of the legislature to modify the statute to specifically except products liability from its application. Respondent does not cite, and our research has not revealed, any indication the legislature intended to enter this area of the tort law. *See* Conf. Comm. Rep. No. 21-76, in 1976 Senate Journal, at 848 ("the degree of *negligence* of the injured person . . . should be compared against the aggregate *negligence* of the defendants[.]") (emphasis added); Conf. Comm. Rep. No. 26, in 1976 House Journal, at 1132 (same); Sen. Stand. Comm. Rep. No. 489, in 1975 Senate Journal, at 1020 (purpose of amendment to provide recovery where *negligence* of plaintiff equal to that of defendant); Hse. Stand. Comm. Rep. No. 722, in 1975 House Journal, at 1309 (same).

Indeed, the legislative history indicates a desire to prevent application of the doctrine of contributory negligence to defeat plaintiffs' common law negligence claim. *Wong v. Hawaiian Scenic Tours,* 64 Haw. at 405, 642 P.2d at 933; Hse. Stand. Comm. Rep. No. 397, in 1969 House Journal, at 778 (contributory negligence "seems to be unfair and in opposition to the average person's concept of justice"); Sen. Stand. Comm. Rep. No. 849, in 1969 Senate Journal, at 1194. We therefore reject the reasoning of those jurisdictions that have construed the term "negligence" in their respective statutory scheme to apply to strict products liability.[3] Such a construction is not only unjustified in light of the legislative history of HRS § 663-31, but runs counter to the principles that led to our adoption of strict products liability.

In *Stewart v. Budget Rent-A-Car Corp.,* 52 Haw. 71, 470 P.2d 240 (1970), we adopted strict products liability in this jurisdiction.

---

[3] See *Forsythe v. Coats Co.,* 230 Kan. 553, 639 P.2d 43 (1982); *Alden Wells Veterinarian Clinics, Inc. v. Wood,* 324 N.W.2d 181 (Minn. 1982), (adopted without discussion); *Suter v. San Angelo Foundry & Machine Co.,* 81 N.J. 150, 406 A.2d 140 (1979) (interpreting "fault" as synonymous with "negligence"); *Dippel v. Sciano,* 37 Wis. 2d 433, 155 N.W.2d 55 (1967) (*in accord Schuh v. Fox River Tractor Co.,* 63 Wis. 2d 728, 218 N.W.2d 279 (1974))

Other courts have adopted modified comparative negligence by analogy to the modified comparative negligence statute, *Thibault v. Sears, Roebuck & Co.,* 118 N.H. 802, 395 A.2d 843 (1978), or where the statute in question used the term "fault," *Austin v. Raybestos-Manhattan, Inc.,* 471 A.2d 280 (Me. 1984).

There we stated:

> [T]he public interest in human life and safety requires the maximum possible protection that the law can muster against dangerous defects in products; that by placing the goods on the market the maker and those in the chain of distribution represent to the public that the products are suitable and safe for use; and that the burden of accidental injuries caused by defective chattels should be placed upon those in the chain of distribution as a cost of doing business and as an incentive to guard against such defects. (Footnote omitted).

*Stewart,* 52 Haw. at 74-75, 470 P.2d at 243.

Our desire to protect consumers and hold manufacturers and distributors accountable for placing unsafe goods in the market is best served by insuring that application of comparative negligence principles does not inadvertently create an "all or nothing" bar to plaintiffs' recovery. *See Kaneko,* 62 Haw. at 464, 654 P.2d at 354; *Mulherin v. Ingersoll-Rand Co.,* 628 P.2d 1301, 1303-04 (Utah 1981); V. Schwartz, Comparative Negligence § 12.5 (2d ed. 1986). *See also* 4 F. Harper, F. James & O. Gray, The Law of Torts §§ 22.7, at 317 n.44 (2d ed. 1986). Employing modified comparative negligence principles in the strict products liability context would create such a bar by "allowing a defendant to escape liability which the jury has allocated to him, irrespective of the responsibility allocated to the plaintiff. *See Murray v. Fairbanks Morse,* 610 F.2d 149, 162 (3d Cir. 1979)." *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 429 (Tex. 1984).

Moreover, our desire to create economic incentives for safer products is best served by preventing the creation of a complete bar to plaintiffs' recovery where the manufacturer or distributor is partially responsible for the injuries sustained. Such a bar would result in inefficient economic incentives to produce safe products. *See Murray,* 610 F.2d at 161; *Duncan,* 665 S.W.2d at 428. Obviously, this would significantly reduce the incentives for creating safer products that are often or easily misused or altered by consumers and for placing the cost for partially unsafe products on the consumer. *See Mulherin,* 628 P.2d at 1303, V. Schwartz, *supra,* § 12.7, at 213.

Petitioner's strict liability claim is not defeated merely because he was found to be 67% negligent and Respondent to be 33%

liable. Accordingly it was error to find harmless the grant of directed verdict on grounds that modified comparative negligence applies to actions sounding in strict products liability.

### B.

Although Petitioner's claim was not defeated merely by the jury finding him more negligent than the defendant, the circuit court correctly found insufficient the strict products liability claim. The shower door was not a "product" for purposes of a strict products liability cause of action.

We first approached the issue of defining the term "product" for purposes of strict products liability in *Kaneko*, 65 Haw. at 452-58, 654 P.2d at 347-50. There we adopted a "case-by-case" approach to the issue, taking into consideration the policies that led us to adopt strict products liability. *Id.* at 455, 654 P.2d at 349.[4] *Kaneko* concluded that because a prefabricated building is assembled from component parts without substantial change or appropriate warnings, and since the manufacturer is best able to distribute the loss resulting from harm incurred while assembling the structure, it is a "product" for purposes of strict products liability. *See id.* at 457-58, 654 P.2d at 350 (adopting in part the reasoning of *Lantis v. Astec Industries, Inc.*, 648 F.2d 1118 (7th Cir. 1981)).[5]

---

[4] In so doing, we noted § 402A of the Restatement (Second) of Torts does not present an exhaustive list of items that will be considered "products." Comment d reads in part:

> Thus the rule stated applied to an automobile, a tire, an airplane, a grinding wheel, a water heater, a gas stove, a power tool, a riveting machine, a chair and an insecticide. It applies also to products which, if they are defective, may be expected to and do cause only "physical harm" in the form of damage to the user's land or chattels, as in the case of animal food or a herbicide.

Restatement (Second) of Torts § 402A, Comment d.

[5] As in *Kaneko*, other jurisdictions' decisions that have addressed this issue rest largely on the courts' determination of the applicability of the policy considerations which have led to adoption of strict products liability in the first instance.

> These courts, rationalizing that the law should be based on current concepts of what is right and just, have pointed out that the purchaser of a home in a developed subdivision usually has no architect or other professional advisor of his own; he has no real competency to inspect the dwelling on his own; his actual examination is, in the nature of things, largely superficial; and his opportunity for obtaining meaningful protective changes in the conveyancing documents

However, more recently, we refused to hold a "portion of leased premises" to be a product for purposes of strict products liability. *Bidar v. Amfac, Inc.,* 66 Haw. 547, 556-57, 669 P.2d 154, 161 (1983). In *Bidar,* plaintiff was injured when a towel bar in a hotel room's bathroom tore loose from the wall as she attempted to use it to pull herself up. We construed the previous ruling in *Kaneko* to be limited to "a prefabricated building that must be assembled," and perceived "no good reason here to lend a more expansive meaning to 'product' than we did in *Kaneko.*" *Id.*

Similarly, the Intermediate Court of Appeals has construed this portion of *Kaneko* to prevent application of strict products liability to a metal panel torn loose during a rainstorm striking plaintiff while working on the roof of a building. *Messier v. Ass'n of Apartment Owners of Mt. Terrace,* 6 Haw. App. ___, 735 P.2d 939 (1987). Looking to underlying policy considerations, the court determined that "[w]itholding the rule will not measurably depreciate [plaintiff's] chances of obtaining compensation for his injuries," and "[h]e does not face the kind of difficulty in proving [defendants'] negligence . . . as is faced by plaintiffs in other cases where the doctrine of strict products liability has been applied." *Messier,* 6 Haw. App. at ___, 735 P.2d at 947-48.

These same considerations weigh against application of strict products liability here. The problems of proof that led to our adoption of strict products liability are not present. *Cf. Stewart v. Budget Rent-A-Car Corp.,* 52 Haw. at 75, 470 P.2d at 243, *American Broadcasting v. Kenai Air of Hawaii,* 67 Haw. 219, 227, 668 P.2d 1, 6 (1984); *Beerman v. Toro Manufacturing Corp.,* 1 Haw. App. 111, 115, 615 P.2d 749, 753 (1980), and traditional remedies for landlord's failure to adequately equip or maintain the premises still apply. *See*

---

prepared by a builder-vendor is negligible. Supporting the application of strict liability in these cases is the idea, the courts state, that if injury results from defective construction, the cost should be borne by the responsible developer who creates the danger, who is in a better economic position to bear the loss.

Annotation, *Recovery, Under Strict Liability in Tort, for Injury or Damage Caused by Defects in Building or Land,* 25 A.L.R.4th § 2, 351, 356 (1983).

None of these reasons is prevalent here. The danger posed by the glass door was obvious to the tenant and opportunity for effecting changes in the condition were not only available but required under HRS § 521-55 (1985). As to the cost of the injury, it is unclear that the Respondent is in a better position to guard against such injuries where the premises are occupied by another party.

*Livingston v. Begay,* 98 N.M. 712, 717, 652 P.2d 734, 739 (1982). · Further, unlike other sellers of consumer products, the landlord owning used property cannot adjust the costs of protecting the consumer up the chain of distribution. "He may only do it, at best, *down* the chain of 'distribution,' namely by charging more to his tenants." *Becker v. IRM Corp.,* 38 Cal. 3d 454, 486, 213 Cal. Rptr. 213, 234, 698 P.2d 116, 137 (Lucas, J., dissenting in part) (1985) (emphasis in original). The same economic incentives for creating safer products through an enduring commercial relationship between the manufacturer and its distributors are not present in the case of the residential landlord. *See Livingston v. Begay,* 98 N.M. at 716, 652 P.2d at 738; *Dwyer v. Skyline Apartments, Inc.,* 123 N.J. Super. 48, 55, 301 A.2d 463, 467, *aff'g obiter dictum,* 63 N.J. 577, 311 A.2d 1 (1973) (per curiam).

Such a landlord is not engaged in mass production whereby he places his product — the apartment — in a stream of commerce exposing it to a large number of consumers. He has not created the product with a defect which is preventable by greater care at the time of manufacture or assembly. He does not have the expertise to know and correct the condition so as to be saddled with responsibility for a defect regardless of negligence.

An apartment involves several rooms with many facilities constructed by many artisans with differing types of expertise, and subject to constant use and deterioration from many causes. It is a commodity wholly unlike a product which is expected to leave the manufacturer's hands in a safe condition with an implied representation upon which the consumer justifiably relies.

The tenant may expect that at the time of the letting there are no hidden dangerous defects known to the landlord and of which the tenant has not been warned. But he does not expect that all will be perfect in his apartment for all the years of his occupancy with the result that his landlord will be strictly liable for all consequences of any deficiency regardless of fault. He expects only that in the event anything goes wrong with the accommodations or the equipment therein, the landlord will repair it when he knows or should know of its existence; and that if injury results liability will attach.

*Dwyer,* 123 N.J. Super. at 55, 301 A.2d 467.

Petitioner argues *Boudreau v. General Electric Co.*, 2 Haw. App. 10, 17, 625 P.2d 384, 389-90 (1981), permits the tenant to sue the landlord for defective products within the home. *Boudreau* is inapposite to the present factual circumstances in that the landlord installed the new washer/dryer which exploded and injured plaintiff. The appliance was separate from the structure itself,[6] and installed by the landlord.[7] In the instant case, the shower and its door were an integral part of the structure of the apartment building and there was no evidence adduced that Respondent installed the shower during or after renovation. *See Livingston v. Begay*, 98 N.M. at 716, 652 P.2d at 738. *See also George Washington University v. Weintraub*, 458 A.2d 43, 49 n.9 (D.C. App. 1983).[8]

We hold that defects in the building itself did not entitle Petitioner to an instruction on strict products liability.

### IV.

Although the Intermediate Court of Appeals affirmed the circuit court based in part on a misreading of *Kaneko,* the result reached by the intermediate court was correct. The judgment of the circuit court is affirmed.

*James T. Leavitt, Jr.,* and *Woodruff K. Soldner* for the writ and on the brief for Petitioner-Appellant.

*Grant K. Kidani, Shelton G. W. Jim On,* and *Paul T. Hoshino* on the answer for Defendant-Appellee.

---

[6] *Cf. Fakhuory v. Magner*, 25 Cal. App. 3d 58, 63, 101 Cal. Rptr. 473, 476 (1972) ("[w]e conclude that . . . the doctrine of strict liability does apply to the landlord, not as lessor of real property, but as lessor of the furniture.").

[7] *Cf. Golden v. Conway*, 55 Cal. App. 3d 948, 962, 128 Cal. Rptr. 69, 78 (1976) (lessor who "equips the premises with an appliance without knowing whether or not it is defective because of the manner in which it was manufactured or installed, and it proves to have defects . . . is strictly liable in tort.").

[8] Petitioner also urges us to adopt the rationale of the California supreme court in *Becker v. IRM Corp.*, 38 Cal. 3d 454, 213 Cal. Rptr. 213, 698 P.2d 116 (1985). There the court permitted plaintiff's suit against the landlord on the theory of strict liability reasoning that the same policy reasons for applying strict liability apply as in *Greeman v. Yuba Power Products, Inc.*, 59 Cal. 2d 57, 27 Cal. Rptr. 697, 377 P.2d 897 (1963), and other cases. We are unpersuaded by the court's arguments. *See Becker v. IRM Corp.*, 38 Cal. 3d at 480, 213 Cal. Rptr. at 230, 698 P.2d at 133 (Lucas, J., dissenting in part).