924 P.2d 572

**Fulton A. RAPOZA, Jr., Plaintiff–Appellant,**

v.

**Sean D. PARNELL, Defendant–Appellee.**

**No. 17344.**

Intermediate Court of Appeals of Hawai'i.

Aug. 28, 1996.

As Amended Sept. 3, 1996.

80

Lawrence W. Cohn (Cohn, Sogi & Smith, of counsel), on the briefs, Kailua–Kona, for plaintiff-appellant.

Jeffrey H. K. Sia and Rhonda A. Nishimura (Libkuman, Ventura, Ayabe, Chong & Nishimoto, of counsel), on the brief, Honolulu, for defendant-appellee.

Before WATANABE, ACOBA and KIRIMITSU, JJ.

KIRIMITSU, Judge.

In this pedestrian/automobile accident case, plaintiff-appellant Fulton A. Rapoza, Jr. (Plaintiff), appeals from the July 6, 1993 judgment entered in favor of defendant-appellee Sean D. Parnell (Defendant) and the August 3, 1993 order denying Plaintiff's motion for new trial. For the reasons set forth below, we vacate the judgment and remand for a new trial.

## I. BACKGROUND

On August 18, 1989, at 3:00 p.m., Plaintiff got off from work at the King Kamehameha Hotel and walked a block or two to a bar called The Office. At The Office, Plaintiff had a beer with a friend, Kip Taylor (Taylor). Taylor invited Plaintiff to dinner at Taylor's house, and Plaintiff accepted this invitation. On the way to dinner, Taylor drove Plaintiff to a nearby liquor store where they bought two regular-sized bottles of wine.

At about 6:00 or 7:00 p.m., Taylor and Plaintiff arrived at Taylor's home. During the course of the evening, Plaintiff drank wine. At about 11:30 p.m., Plaintiff asked Taylor for a ride home, but Taylor refused. Plaintiff then left, intending to walk or hitchhike home.

A little after midnight, Plaintiff was walking northbound on Kuakini Highway. Meanwhile, Defendant was driving with three passengers, northbound on Kuakini Highway—heading in the same direction as Plaintiff.

According to a police report, at approximately 12:15 a.m., Defendant's automobile struck Plaintiff. At the time of the accident, Plaintiff claimed that he was on the side of the road, while Defendant and one of the passengers maintained that Plaintiff was in the middle of the road. Defendant maintains that when he saw Plaintiff in the middle of the road, Defendant slammed on his brakes, causing his car to spin and eventually strike Plaintiff.[1] Plaintiff was transported to Kona Hospital where his blood alcohol content was measured at 0.273 grams per deciliter.

On December 19, 1990, Plaintiff filed a negligence lawsuit against Defendant. At trial, Defendant called Bernice E. Coleman, M.D. (Dr. Coleman) as an expert witness on the effect that alcohol has on a person. Dr. Coleman testified about the amount of alcohol in Plaintiff's blood at the time of the accident and the effect that alcohol had on Plaintiff's body. At trial, Plaintiff moved to

---

1. As a result of this accident, plaintiff-appellant Fulton A. Rapoza, Jr. (Plaintiff), suffered a frac- tured leg and a lacerated eye.

exclude Dr. Coleman's testimony because, *inter alia*, Dr. Coleman could not link the effect of alcohol to the cause of the accident. The trial court denied this motion.

During trial, Plaintiff also requested that the trial court give to the jury Plaintiff's proposed instructions on the law of comparative negligence and the last clear chance doctrine; the trial court refused this request.

Pursuant to a special verdict form, the jury found both parties negligent: Plaintiff 72% negligent and Defendant 28% negligent. On July 6, 1993, the trial court entered a judgment in favor of the Defendant. On July 8, 1993, Plaintiff filed a motion for a new trial, which was denied on August 3, 1993. Thereafter, Plaintiff filed a timely appeal.

## II. *DISCUSSION*

On appeal, Plaintiff challenges: (1) the trial court's refusal to give certain requested jury instructions on the last clear chance doctrine and the law of comparative negligence; (2) the trial court's decision to allow Defendant's expert witness to testify about Plaintiff's alcohol consumption. We address each challenge in order.

2. Plaintiff's proposed instruction number 3 would have read as follows:

Although Plaintiff claims that he was not negligent in causing the accident, if you find that he was negligently in the roadway, you may still render a verdict in Plaintiff's favor if you find that Plaintiff was in a position of danger or peril; that [defendant-appellee Sean D. Parnell (Defendant)] had a reasonable opportunity to avoid injuring Plaintiff by the exercise of ordinary care, and that Defendant negligently failed to avoid injuring Plaintiff. That is, Defendant is liable to Plaintiff if he had the last clear chance to avoid hitting Plaintiff.

3. Hawai'i Revised Statutes § 663-31 (1993) provides:

**Contributory negligence no bar; comparative negligence; findings of fact and special verdicts.** (a) Contributory negligence shall not bar recovery in any action by any person or the person's legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the negligence of the person or in the case of more than one person, the aggregate negligence of such persons against whom recovery is sought, but any dam-

### A. The Trial Court Did Not Err in Refusing to Give Plaintiff's Requested Jury Instruction Number 3 But Erred in Refusing to Give Plaintiff's Requested Jury Instruction Number 4.

#### 1. Standard of review

■ "When jury instructions, or the omission thereof, are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent or misleading." *Craft v. Peebles*, 78 Hawai'i 287, 302, 893 P.2d 138, 153 (1995) (internal quotation marks and citations omitted).

#### 2. Plaintiff's jury instruction number 3

■ Plaintiff contends that the trial court erred in refusing to give Plaintiff's jury instruction number 3 regarding the last clear chance doctrine.[2] However, Defendant counters that the last clear chance doctrine does not apply in the instant case because the doctrine was abolished by the legislature when it enacted a modified comparative negligence statute in 1969—today codified as Hawai'i Revised Statutes (HRS) § 663-31 (1993).[3]

ages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made.

(b) In any action to which subsection (a) of this section applies, the court, in a nonjury trial, shall make findings of fact or, in a jury trial, the jury shall return a special verdict which shall state:

(1) The amount of the damages which would have been recoverable if there had been no contributory negligence; and

(2) The degree of negligence of each party, expressed as a percentage.

(c) Upon the making of the findings of fact or the return of a special verdict, as is contemplated by subsection (b) above, the court shall reduce the amount of the award in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made; provided that if the said proportion is greater than the negligence of the person or in the case of more than one person, the aggregate negligence of such persons against whom recovery is sought, the court will enter a judgment for the defendant.

(d) The court shall instruct the jury regarding the law of comparative negligence where appropriate.

In order to determine whether the last clear chance doctrine is still viable in Hawai'i, we review the history behind the enactment of HRS § 663–31.

Prior to the adoption of HRS § 663–31, all claims of negligence in Hawai'i were subject to the common law defense of contributory negligence. *Armstrong v. Cione*, 6 Haw. App. 652, 657, 736 P.2d 440, 444 (citing *Pacheco v. Hilo Elec. Light Co.*, 55 Haw. 375, 520 P.2d 62 (1974)), *aff'd on other grounds*, 69 Haw. 176, 738 P.2d 79 (1987). Under this contributory negligence defense, the plaintiff's contributory fault completely barred his or her recovery for negligence. *Pacheco*, 55 Haw. at 382, 520 P.2d at 67 (citation omitted).

An exception to the defense of contributory negligence was the common law doctrine of last clear chance—a doctrine judicially created to mitigate the harsh results of contributory negligence. Prosser, *Law of Torts* § 65, at 438 (3d ed. 1964).[4]

> [The last clear chance] doctrine states that even where the injured party was negligent in the first instance, his [or her] negligence will not defeat recovery 'if it be shown that the defendant might have avoided the injury by the exercise of ordinary care and reasonable prudence.' *Ferreira v. Honolulu R.T. and L., Co.*, 16 Haw. 615, 620 (1905). In order for the rule to apply, it must appear that either the plaintiff was in actual peril and unable to extricate himself [or herself], or in immediate danger of getting into a perilous situation to the knowledge of the defendant. Furthermore, there must have been a reasonable opportunity thereafter for the defendant to have averted the injury.

*Silva v. Oishi*, 52 Haw. 129, 132, 471 P.2d 524, 526 (1970). In other words, according to the last clear chance doctrine, if the defen-

dant had the last clear chance to avoid the accident but failed to do so, the defendant would be liable for negligence.

In 1969, the legislature enacted Hawai'i's modified comparative negligence statute and, consequently, abolished the common law doctrine of contributory negligence. 1969 Haw. Sess. L. Act 277, § 1 at 422–23. The legislature abrogated the doctrine of contributory negligence because it believed the doctrine was "unfair." Hse. Stand. Comm. Rep. No. 397, in 1969 House Journal, at 778; Sen. Stand. Comm. Rep. No. 849, in 1969 Senate Journal, at 1194. In enacting this modified comparative negligence statute, the legislature "sought to temper a phase of the common law deemed inconsistent with contemporary notions of fairness." *Wong v. Hawaiian Scenic Tours, Ltd.*, 64 Haw. 401, 405, 642 P.2d 930, 933 (1982) (per curiam).

■ Today, Hawai'i's modified comparative negligence statute, HRS § 663–31, bars a plaintiff's recovery only if the plaintiff's negligence is greater than the negligence of all defendants involved. If recovery is not barred, HRS § 663–31 then reduces the plaintiff's recovery against the defendant or defendants by the proportion of fault of the negligent plaintiff. The purpose of this statute is " 'to allow one party at fault in an accident resulting in injury to be recompensed for the damages attributable to the fault of another if the former's negligence was not the primary cause of the accident.' " *Mist v. Westin Hotels, Inc.*, 69 Haw. 192, 195, 738 P.2d 85, 90 (1987) (quoting *Wong*, 64 Haw. at 405, 642 P.2d at 933).

Nothing in the language or legislative history of HRS § 663–31 explicitly abolishes the last clear chance doctrine. However, be-

---

4. Regarding the doctrine of last clear chance, Dean Prosser stated:

> The real explanation would seem to be a dislike for the defense of contributory negligence which has made the courts rebel at its application in many situations, and accept without reasoning the conclusion that the last wrongdoer is necessarily the worst wrongdoer, or at least the decisive one, and should pay. The doctrine has been called a transitional one, a way station on the road to apportionment of damages; but its effect has been to

freeze the transition rather than to speed it. As an ultimate just solution, it is obviously inadequate, since, except in a few cases where a part of the plaintiff's damages have occurred before the 'last clear chance,' it merely transfers from the plaintiff to the defendant an entire loss due to the fault of both.

Prosser, *Law of Torts* § 65, at 438 (3d ed. 1964) (footnotes omitted). *See also Silva v. Oishi*, 52 Haw. 129, 137 n. 1, 471 P.2d 524, 529 n. 1 (1970) (Levinson, J., dissenting) (quoting Prosser).

cause the purpose of the last clear chance doctrine is to mitigate the harsh results of contributory negligence and because the justification for the last clear chance doctrine no longer exists in light of the enactment of HRS § 663–31, we find no justification for the doctrine of last clear chance.

In addition, the doctrine of last clear chance has been severely criticized for being harsh as well as archaic in light of modern ideas of proximate causation. Dissenting in *Silva*, Justice Levinson compared the results of the last clear chance doctrine to the harsh results of the contributory negligence doctrine. He stated:

> If the doctrine of "last clear chance" applies, the entire burden is shifted back onto the defendant who must then pay the full amount of the plaintiff's damages despite the fact that the plaintiff was negligent. Either the plaintiff gets everything or he gets nothing; no middle ground is possible under the equally absurd doctrines of "contributory negligence" and "last clear chance."

*Silva*, 52 Haw. at 137, 471 P.2d at 528–29 (Levinson, J., dissenting). Furthermore, as Dean Prosser explains, the archaic nature of the last clear chance doctrine makes it unworkable:

> The first explanation given, and the one which still is most often stated, is that if the defendant has the last clear opportunity to avoid the harm, the plaintiff's negligence is not a "proximate cause" of the result. While this coincides rather well with the attempt made in an older day to fix liability upon the "last human wrongdoer," it is quite out of line with modern ideas of proximate cause. In such a case the negligence of the plaintiff undoubtedly has been a cause, and a substantial and important one, of his [or her] own damage, and it cannot be said that injury through the defendant's negligence was not fully within the risk which the plaintiff has created. If the injury should be to a third person, such as a passenger in the defendant's car, the plaintiff's negligence would clearly be recognized as a reasonable cause, and it is an utterly artificial distinction which applies any other rule when the plaintiff himself [or herself] is injured.

Prosser, *Law of Torts* § 65, at 437 (3d ed. 1964).

Moreover, the apportionment of damages provision in HRS § 663–31 has rendered the doctrine of last clear chance completely obsolete. HRS § 663–31 allows for an apportionment of damages provided that the plaintiff's negligence is not greater than the defendant or defendants. Under HRS § 663–31(b)(2), the fact finder must determine "[t]he degree of negligence of each party[.]" If the fact finder determines that the defendant's failure to avail himself or herself of the last clear chance to avoid the accident made such failure the sole proximate cause of the plaintiff's injuries, the fact finder will find no negligence on the part of the plaintiff. If the fact finder finds that both the defendant and the plaintiff were causes that directly contributed to plaintiff's injuries, the fact finder will determine the relative degree of negligence accordingly.

Because HRS § 663–31 clearly permits the apportionment of damages and because no justification exists to maintain the harsh and archaic doctrine of last clear chance, we believe that the better course would be to abolish the use of this doctrine by any plaintiff. Accordingly, we hold that the common law doctrine of last clear chance is no longer viable in Hawai'i.[5]

---

5. In support of the contention that the last clear chance doctrine survives in Hawai'i, Plaintiff cites a shrinking number of comparative negligence jurisdictions that still recognize the last clear chance doctrine. *Patterson v. Buzzell*, 128 Ga.App. 776, 197 S.E.2d 855 (1973); *Tiedeman v. Chicago*, 513 F.2d 1267 (8th Cir.1975) (applying Minnesota law); *Underwood v. Illinois Cent. R. Co.*, 205 F.2d 61 (5th Cir.1953) (applying Mississippi law); *Bezdek v. Patrick*, 167 Neb. 754, 94 N.W.2d 482 (1959); *Vlach v. Wyman*, 78 S.D. 504, 104 N.W.2d 817 (1960). However, we find none of these cases persuasive.

In light of our discussion, *supra*, we feel comfortable in adding Hawai'i to the long list of comparative negligence jurisdictions that have abolished the doctrine of last clear chance. *See Kaatz v. State*, 540 P.2d 1037 (Alaska 1975); *Li v. Yellow Cab Co. of Cal.*, 13 Cal.3d 804, 119 Cal. Rptr. 858, 532 P.2d 1226 (1975); *Burns v. Ottati*, 513 P.2d 469 (Colo.App.1973); *Hoffman v. Jones*, 280 So.2d 431 (Fla.1973); *Cushman v. Perkins*,

Because this doctrine is no longer viable and because giving an instruction on the last clear chance doctrine would be both erroneous and misleading in light of our discussion, *supra*, we further hold that the trial court did not err when it refused to give Plaintiff's jury instruction number 3 regarding the doctrine of last clear chance.

### 3. *The refusal of Plaintiff's jury instruction number 4*

■ Plaintiff complains that the trial court erred in refusing to give Plaintiff's jury instruction number 4[6] regarding the law of comparative negligence. Pursuant to Plaintiff's proposed instruction number 4, the jury would have been informed about the possible legal consequences of apportioning negligence under Hawai'i's modified comparative negligence statute, HRS § 661–63. In other words, the jury would have been informed, *inter alia*, that if the jury found that plaintiff's negligence was greater than defendant's, the plaintiff would not be able to recover as a matter of law.

In *Kaeo v. Davis*, 68 Haw. 447, 719 P.2d 387 (1986), the Hawai'i Supreme Court faced a similar question of whether the trial court erred by not informing the jury of the possible legal effect of a verdict apportioning negligence among joint tortfeasors.

In analyzing this issue in *Kaeo*, the Hawai'i Supreme Court examined two schools of thought. According to one school, the jury should never be told about the law of comparative negligence because the jury may then be swayed by sympathy and may manipulate the apportionment of negligence to reach a socially desired result. *Id.* at 460, 719 P.2d at 395 (citing *McGowan v. Story*, 70 Wis.2d 189, 234 N.W.2d 325, 329 (1975)). In contrast, the other school of thought believes that the jury should be informed of the legal effect of finding percentages of negligence because the jury will be able to better fulfill its fact finding function. *Id.* at 460, 719 P.2d at 395–96 (citing *Roman v. Mitchell*, 82 N.J. 336, 413 A.2d 322, 327 (1980)).

In choosing to follow the latter school of thought, the *Kaeo* court explained:

We are convinced too that "in most cases the jury will in fact know which party is favored by a particular answer." A juror in all likelihood would deduce from what happens at trial "that it will be in the plaintiff's interest for him [or her] to answer 'No' to the question [on] contributory negligence[,]" or that it may be in the plaintiff's interest to answer "yes" to the question on the negligence of a putative joint tortfeasor. "Thus an attempt to keep the jury in the dark as to the [legal] effect of its answers is likely to be unavailing . . . ."

Given these probabilities, we cannot discount "the danger that [jurors] will guess wrong about the law, and may shape [their] answers to the special verdicts, contrary to [their] actual beliefs, in a mistaken attempt to ensure the result [they] deem[ ] desirable." *Id.* Nor can we dismiss the

---

245 A.2d 846 (Me.1968); *Gustafson v. Benda*, 661 S.W.2d 11 (Mo.1983); *Davies v. Butler*, 95 Nev. 763, 602 P.2d 605 (1979); *Dominguez v. Manhattan & Bronx Surface Transit Operating Auth.*, 46 N.Y.2d 528, 415 N.Y.S.2d 634, 388 N.E.2d 1221 (1979); *Mitchell v. Ross*, 14 Ohio App.3d 75, 470 N.E.2d 245 (1984); *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn.1992); *French v. Grigsby*, 571 S.W.2d 867 (Tex.1978); *Cunningham v. Western Liquid Propane Gas Serv., Inc.*, 39 Wash.App. 185, 693 P.2d 123 (1984), *reconsideration denied*, (Wash.App.1985), *review denied* (Wash.1985); *Ratlief v. Yokum*, 167 W.Va. 779, 280 S.E.2d 584 (1981); *Danculovich v. Brown*, 593 P.2d 187 (Wyo.1979).

**6.** The proposed instruction number 4 reads as follows:

If you find from all of the evidence that Plaintiff was contributorily negligent and that his negligence was a cause of the accident, then you must first determine the amount of Plaintiff's total damages on the jury verdict form; then you must determine the degree of negligence of Plaintiff and Defendant expressed as percentages.

If you determine from the evidence that Plaintiff's negligence was *less* than that of Defendant, then the *court* will reduce the amount of Plaintiff's award in proportion to the amount of negligence attributable to Plaintiff.

If, on the other hand, you find from all of the evidence that the negligence of Plaintiff is *greater* than the negligence of Defendant, then Plaintiff is not entitled to recover any damages for his injuries and the court will enter judgment for Defendant.

(Emphases in original.)

possibility that some jurors with incomplete knowledge of the law will exert undue influence in the deliberations. In either event, it would be " 'better for courts to be the vehicle by which the operation of the law is explained.' "

*Kaeo*, 68 Haw. at 461, 719 P.2d at 396 (citations omitted).

In so reasoning, the Hawai'i Supreme Court held that "the trial court, if requested and when appropriate, should inform the jury of the possible legal consequences of a verdict apportioning negligence among joint tortfeasors." *Id.* Although *Kaeo* dealt specifically with apportioning negligence among joint tortfeasors, we believe the reasoning in *Kaeo* is clearly applicable in the instant case.

In the case at bar, Plaintiff offered his proposed instruction number 4 on the law of comparative negligence before jury deliberations; the trial court refused Plaintiff's request. Plaintiff again offered the same proposed instruction after the jury had questions about the awarding of damages. The jury asked the trial court: "How will the Plaintiff['s] award be determined? Will the total amount awarded to the Plaintiff be the percent amount of question number six of the total dollar amount of question number five? [7] Is it the general damages times the percentage of Defendant's negligence?" After hearing arguments from both Plaintiff and Defendant, the trial court refused to read Plaintiff's proposed instruction number 4 and responded to the jury as follows: "The jury is to answer the questions on the verdict form without specula-

7. Special verdict form question numbers 5 and 6 read as follows:

> *Question No. 5.* Without taking into consideration the question of reduction of damages due to the contributory negligence of the Plaintiff, if any, what are Plaintiff's total damages?
>
> Special Damages $ _____
> General Damages $ _____
>
> ....
>
> *Question No. 6.* Assuming the combined negligence of the Defendant and the contributory negligence of the Plaintiff, if any, to be 100%, what proportion of such combined negligence is attributable to the following (1) to the plaintiff, and (2) to the Defendant?
>
> Plaintiff _____ ____%

tion. Questions five and six are to be answered independently."

HRS § 663-31(d) provides that "[t]he court shall instruct the jury regarding the law of comparative negligence where appropriate." Hawai'i Rules of Civil Procedure Rule 49(a) provides in relevant part: "The court *shall* give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue." (Emphasis added.)

In light of the reasoning of *Kaeo* and the questions posed by the jury regarding the apportionment of damages, we conclude that the trial court should have instructed the jury on the law of comparative negligence and the trial court's failure to do so made the jury instructions that were given prejudicially insufficient. Accordingly, we hold that the trial court erred when it refused Plaintiff's proposed jury instruction number 4 regarding the law of comparative negligence.

**B.** *The Trial Court Did Not Err in Allowing Defendant's Expert Witness to Testify About Plaintiff's Alcohol Consumption.*

### 1. *Standard of review*

 On appeal, Plaintiff contends that the trial court should have excluded all alcohol-related evidence because such evidence was either irrelevant, violative of Hawai'i Rules of Evidence (HRE) Rule 401,[8] or unfairly prejudicial, in violation of HRE Rule 403.[9]

> Defendant _____ ____%
> Total: (Note: The total must ____%
> equal 100%)

8. Hawai'i Rules of Evidence (HRE) Rule 401 provides: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

9. HRE Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[E]videntiary decisions based on HRE Rule 401 are reviewed under the right/wrong standard of review. Evidentiary decisions based on HRE Rule 403, which require a 'judgment call' on the part of the trial court, are reviewed for an abuse of discretion. *See Sato v. Tawata*, 79 Hawai'i 14, 19, 897 P.2d 941, 946 (1995) ("[T]he determination of the admissibility of relevant evidence under HRE 403 is eminently suited to the trial court's exercise of its discretion because it requires a 'cost-benefit calculus' and a 'delicate balance between probative value and prejudicial effect.'" (citations and brackets omitted.)). An abuse of discretion occurs where the trial court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Id.*

*Walsh v. Chan*, 80 Hawai'i 212, 215–16, 908 P.2d 1198, 1201–02 (1995).

### 2. *Relevancy of the alcohol-related evidence*

▇▇▇ Plaintiff contends that Dr. Coleman's testimony about Plaintiff's alcohol consumption was irrelevant because Dr. Coleman admitted in a prior deposition that she could not link Plaintiff's intoxication to who was at fault in the instant case. Plaintiff relies primarily on *McKenna v. Volkswagenwerk Aktiengesellschaft*, 57 Haw. 460, 558 P.2d 1018 (1977).

In *McKenna*, the Hawai'i Supreme Court held that "[e]vidence of intoxication is generally admissible on the issue of negligence in a vehicle accident case." *Id.* at 467, 558 P.2d at 1023. However, the *McKenna* court cautioned that "the influence of intoxicating liquor does not constitute actionable negligence or contributory negligence *unless* there is a causal relationship between the intoxication and the accident." *Id.* (emphasis added).

In the instant case, Plaintiff testified that he was drinking throughout the night of the accident. In addition, Defendant and one of the passengers in Defendant's car testified that they saw Plaintiff walking in the middle of the road. Moreover, it is uncontested that Plaintiff's blood alcohol content was mea-sured at 0.273 grams per deciliter after the accident. In light of this evidence, we conclude that a jury could infer that Plaintiff's intoxication interfered with his judgment and his ability to perceive and react to danger, thereby establishing a possible causal relationship between Plaintiff's intoxication and the subsequent accident.

Furthermore, Dr. Coleman testified about Plaintiff's blood alcohol content and the effect that alcohol may have had on Plaintiff. Although Dr. Coleman admitted in her deposition that she could not link Plaintiff's intoxication to who was at fault during the accident, we believe that a causal link could be inferred from Dr. Coleman's testimony in light of the evidence discussed, *supra*. Because Dr. Coleman's testimony, in light of other evidence presented, established a possible causal relationship between Plaintiff's intoxication and the subsequent accident, we hold that Dr. Coleman's testimony regarding Plaintiff's alcohol consumption was clearly relevant to the issue of Plaintiff's contributory negligence.

### 3. *Unfair prejudice of alcohol-related evidence*

▇▇▇ Plaintiff further contends that the trial court abused its discretion in admitting Dr. Coleman's testimony regarding Plaintiff's alcohol consumption because such testimony was unfairly prejudicial. Because Dr. Coleman admitted that she could not link Plaintiff's intoxication to who was at fault during the accident, Plaintiff argues that Dr. Coleman's testimony had "little or no probative value" and "only invited [Dr. Coleman] and the jury to speculate on what [Plaintiff] might have been doing at the time of the accident[.]"

▇▇▇ We disagree. In *Loevsky v. Carter*, 70 Haw. 419, 430, 773 P.2d 1120, 1127 (1989), the Hawai'i Supreme Court held that "although the evidence of drinking is highly prejudicial, the responsibility for maintaining the delicate balance between probative value and prejudicial effect lies largely within the trial court's discretion." In light of all the other evidence linking Plaintiff's intoxication with the subsequent accident, we cannot con-

clude that the probative value of Dr. Coleman's testimony was substantially outweighed by the danger of unfair prejudice. Accordingly, we conclude that the trial court did not abuse its discretion by admitting Dr. Coleman's testimony regarding Plaintiff's alcohol consumption.[10]

## III. CONCLUSION

For the foregoing reasons, we vacate the judgment and remand for a new trial.

---

10. Plaintiff also complains about Bernice E. Coleman, M.D.'s (Dr. Coleman) testimony and Dr. Coleman's illustrative chart regarding statistical data about the effects of alcohol consumption on a social drinker, a person who is tolerant to alcohol and is not an alcoholic. Plaintiff argues that the use of this data on social drinkers was speculative because Dr. Coleman had no basis for determining that Plaintiff was a social drinker.

It is well settled that objections not raised or properly preserved at trial will not be considered on appeal. *MPM Hawaiian, Inc. v. Amigos, Inc.,* 63 Haw. 485, 630 P.2d 1075 (1981). In the instant case, Plaintiff objected generally to Dr. Coleman's testimony regarding Plaintiff's alcohol consumption but failed to raise any objection to Dr. Coleman's use of statistical data at trial. Because Plaintiff did not object to the use of this data at trial, we need not consider this issue on appeal.